# Jones's Appeal.

1. Under the Act of April 9th 1872 (P. L. 47), growing crops, the products of agriculture, in the hands of a receiver of an insolvent firm, where there has been a severance by sale or otherwise of the growing grain before the land itself is sold, go to wages claimants (as specified in the Act) in preference to prior judgment lien creditors.

2. A chose in action, such as an insurance policy, is not subject to a lien in favor of wages claimants under the Act of April 9th 1872.

February 5th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from and certiorari to the Court of Common Pleas of *Chester county :* Of January Term 1883, No. 115.

Appeal of John Jones from a decree of said court confirming the final report of an auditor, making distribution of the balance in the hands of a receiver, appointed by the court in an equitable proceeding between certain partners, and ordering payment in accordance therewith.

Before the Auditor (Alfred B. Reid, Esq.) the following facts appeared : Robert Preston was the owner of a certain woollen mill in Chester county and of land attached thereto, which was encumbered with liens. On December 31st 1878, he entered into partnership with one Firth, and the business of manufacturing woollen goods was carried on by them, under the firm name of " Robert Preston." The stock and machinery in the mill, the mill building and water power and the other real estate, became by virtue of the articles, partnership property.

In 1880 the partners disagreed, and Preston excluded Firth from the premises and thereafter conducted the business himself ; and in January following he effected an insurance on the stock and machinery in the mill. ;

The firm failed, and on February 12th 1881, Preston exe-
cuted an individual assignment, intending to convey all of said
real and personal property, and the business was then discon-
tinued.

On June 1st 1881, the mills were destroyed by fire ; and, in
pursuance of proceedings instituted by Firth, a receiver was
appointed on the 22d of the same month.

Immediately after the fire, Preston adjusted one of the poli-
cies of insurance (the other having been assigned by him to an
individual creditor) and received $1500 from the company. Of
·this, he was afterwards compelled to pay $1300 to the receiver.

At the time of the appointment of the receiver, there were
growing on the land attached to the mill, wheat, corn and grass,
and there was in the ruins of the mill, a quantity of old iron,
the remnants of the machinery, left after the fire.

The receiver sold the old iron and the crops, the wheat and
grass as they stood in the fields : and the assets thus in his hands
as well as the insurance money, were claimed by the operatives
in the mills, under the Act of April 9th 1872, in payment of
wages due them for labor performed within six months prior to
February 12th 1881, when the mills stopped ; and also by the
lien creditors.

The Auditor awarded the entire fund to the wages claim-
ants; but on exceptions filed, the court modified the auditor's
report, by allowing to Jones, who was the first lien creditor, the
proceeds of the old iron and of the grass, and entered a decree
accordingly, FUTHEY, P. J., delivering the opinion.

Whereupon Jones took this appeal, assigning for error ; (1)
and (2) the decree of the court, in awarding the proceeds of
the sale of the corn and wheat to the wages claimants ; and (3)
and (4) in awarding to them the money realized on the policy
of insurance.


*R. Jones Monaghan* and *James Monaghan*, for appellant.—
The owner of land, may, before the levy of an execution, sever
crops and ·change them into personalty, but if he conveys the
land, without reservation ·or severance, the crops will pass
with the real estate as part of it : Wilkins *v.* Vashbinder, 7 W.·
378 ; Bank of Penna. *v.* Wise, 3 W. 394 ; 1 Wash. Real Prop.
*5 ; 3 Id. *625.

It is the levy of an execution which works a severance, but
if there is no severance the crops remain as real estate.    The
Act of April 9th 1872, expressly provides " that no lien of
mortgage ·or judgment entered before such labor is performed,
shall be affected or impaired thereby."    The appellant's judg-
ment was a lien before the labor was performed and before the
crops were grown.

[Jones' Appeal.]

The existence of the liens of the wages claimants did not effect a severance of the crops either actual or implied in law. Herein is the error of the court below. There was no execution levied upon these crops. The accruing of a lien, subject to the appellant's lien and no higher in degree, operates no more as a severance than did the existence of the appellant's judgment before produce that effect. The land, therefore, came into the hands of the receiver with the growing crops thereon unsevered, and his act as court bailiff, in selling property to which he had no title, could not take the proceeds from one set of creditors and give them to another. The Act of 1872 does not give a lien on a chose in action. The lien given by the third section of the Act is limited in its character and extent to that mentioned in the first section. The first section does not profess to give anything more than a lien, which lien was clearly not intended to cover choses in action. It provides for preference in payment " out of the proceeds of the sale of such . . property." A chose in action cannot be levied and sold.

Besides, the extension of the lien given by the third section is expressly " with the like limitations and powers mentioned in the first section." These limitations are found to be (1) character of labor ; (2) character of business ; (3) period of labor ; (4) connection of property on which the lien is given with the business in which the labor was performed.

At the most, the third section of the Act of 1872, cannot be extended beyond other property of like character with that used at the manufactory, but which is used elsewhere than at the place where the labor was performed.

The term " every property " is an expression of general description. It is given a liberal construction by being construed to include personal property, in the general acceptation of the term, chattels and goods of the insolvent wherever found.

The present case cannot be successfully distinguished from Renick v. Boyd, 3 Out. 555, or Pardee's App., 4 Out. 408.

*Ezra Evans,* for appellees.—The wheat was a growing crop at the time the wages were earned. It was an existing part of the property transferred February 12th 1881. It was transferred, subject to the lien of preference given by the Act of 1872, to the labor claimants.

The lien creditors, as such, had no lien upon the growing crop. It was a mere chattel and could be taken in execution and sold as personal property : Herman on Executions 160, section 125 ; Stambaugh v. Yeates, 2 R. 161 ; Pattison's Appeal,

61 Pa. St. 294; Reiff et al. *v.* Reiff, 64 Pa. St. 134; Hershey *v.* Metzgar, 9 Norris 217.

The labor claimants are entitled to a preference for a time not exceeding six months preceding the insolvency, and for an amount not exceeding two hundred dollars each (Act of April 9th 1872, section 1, P. L. 47); and out of the personal property wheresoever found: Act of April 9th 1872, section 3, P. L. 48; Reed's Appeal, 6 Harris 235.

The Act of 1872, by its third section, extends the lien of preference mentioned in the first section thereof to every property. The first section as enlarged by the third would read . . . "shall be preferred and first paid out of the proceeds . . . of every property." The insurance policy, a chose in action, certainly was property. So are its proceeds.

Mr. Justice STERRETT delivered the opinion of the court, March 19th 1883.

The subject of complaint in the first and second specifications is that the amount realized by the receiver from the sale of corn and the growing wheat crop was erroneously awarded to the appellees on their respective claims for wages under the Act of April 9th 1872, to the exclusion of appellant's claim.

The corn was grown on the land bound by appellant's judgments; but, having been garnered in the fall before the receiver was appointed, it came into his possession as personal property of the insolvent firm, in whose service the wages claimants were employed. The wheat, having been sown the same fall, was a growing crop at the time the wages were earned, and in that condition it was afterwards sold by the receiver as personal property. The learned judge was clearly right in so treating it. Growing crops, the product of agriculture, pass to the administrator or assignee for the benefit of creditors, as the case may be, and are liable to be seized and sold on execution as personal chattels of the debtor: Pattison's Appeal, 11 P. F. Smith 294; Hershey *v.* Metzgar, 9 Norris 217. All that is required is that there should be, as there was in this case, a severance, by sale or otherwise, of the growing grain before the land itself is sold. It is quite clear that appellant, as a judgment creditor, had no lien on the growing wheat crop or the proceeds thereof. If he was interested in the proceeds of either it was only as a general creditor of the insolvent firm. As to the proceeds of old iron which had formed part of the machinery of the mill destroyed by the fire, and the grass crop which in an agricultural sense was wholly grown after the claims for wages had accrued and while the land was in the hands of the receiver, the court, upon principles recognized in Rogers *v.* Gilinger, 6 Casey 185; Reiff *v.* Reiff, 14 P. F. Smith 134; Bausman's

Appeal, 9 Norris 178, and other cases, very properly drew a distinction in favor of appellant as a judgment lien creditor; but no question, as to these items, arises in this case.

As we have seen, when the wages were earned and the employers became insolvent, the corn and the growing wheat crop were personal property of the firm, chattels, not in any manner bound by the lien of pre-existing judgments, but liable to seizure and sale on execution. This being so, we are of opinion that, according to the true interpretation of the Act of 1872, the employees in the mill had a lien, upon both, which adhered to the proceeds thereof in the hands of the receiver, and hence the court was right in awarding that part of the fund to them. The first section of the Act provides that all moneys due for labor and services rendered by those belonging to either of the classes mentioned therein " shall be a lien upon said mines, manufactory, business or other property in and about, or used in carrying on said business or in connection therewith, to the extent of the interest of said owners or contractors, as the case may be, in said property, and shall be preferred and first paid out of the proceeds of the sale of such mines, manufactory, business or other property as aforesaid; provided that the claim of such miner, mechanic, laborer and clerk, thus preferred, shall not exceed $200." It is also provided in the fourth section of the Act, " That no lien of mortgage or judgment entered before such labor is performed, shall be affected or impaired thereby." The third section of the Act declares that " in all cases of the death, insolvency or assignment of any person or persons or chartered company, engaged in operations as hereinbefore mentioned, or of executions issued against them, the lien of preference mentioned in the first section of this Act, with the like limitations and powers, shall extend to every property of said persons or chartered company." This clearly gave the appellees a lien on the personal chattels of the firm, including the corn and growing wheat crop in question, and also upon the real estate, subject to the rights of prior mortgage and judgment creditors. The first and second assignments are not sustained.

The question raised by the third and fourth assignments is, whether the appellees had a lien also on the insurance policy or proceeds thereof. When the mill, machinery, &c. were destroyed, the policy became a chose in action, and the money afterwards realized therefrom came into the hands of the receiver as part of the assets of the firm. As has already been observed, the Act gives the employees therein named a lien not only on the real estate but also on the personal goods and chattels of their employers; but, we think it would be a strained construction to hold that it was intended to give them a lien on choses in action.

6 OUTERBRIDGE.—19

.There is nothing in the phraseology of the Act or its supplements to indicate a .legislative intention to extend the lien beyond such personal property as is subject to seizure and sale on execution. The Act of May 8th 1874, P. L. 120, postpones coal lease mortgages to the lien of wages mentioned in the Act of 1872. By the Act of April 20th 1876, P. L. 43, the wages claimants may, after the expiration of thirty days from any voluntary assignment for the benefit of creditors, made by their employers, enforce the collection of their claims, just as if no such assignment had been made ; and, if the assignee has sold the property, he may be compelled to file his account thereof forthwith. The last Act, June 12th 1878, P. L. 207, gives the employees a preference over landlords in all claims for rent of mines, manufactories or other real estate held under lease, where the lessee is the party employing the miners, mechanics, laborers or other clerks, provided that these workmen shall give notice of the nature and amount of their claims to the landlord or his bailiff before actual sale of the property levied on.

The language employed in the several Acts appears to contemplate a lien upon the employers real estate and such personal property as is ordinarily the subject of seizure and sale on execution or distress for rent, and not upon choses in action. We think, therefore, that the learned judge erred in awarding the proceeds of the insurance policy to the labor claimants to the exclusion of other creditors. That part of the fund is not subject to lien in favor of any class of creditors, and hence it should be distributed pro rata among all.

Decree reversed at costs of the appellees, and it is ordered that the record be remitted with instructions to distribute the fund in accordance with this opinion.