121 583<br>134 374

------

# APPEALS OF JACOB F. OBERHOLTZER.

### [Assigned Estate of John W. Gibble.]

#### FROM THE DECREE OF THE COURT OF COMMON PLEAS OF LEBANON COUNTY.

Argued February 20, 1889—Decided March 18, 1889.

1. A mortgage recorded in only one of two adjoining counties, but embracing a tract of land forming one farm lying in both, is not a lien upon the land lying in the county where it is not recorded, except as to the mortgagor and others who have actual notice of its existence.

2. Constructive notice arising from the record of the mortgage results only from the fact that it is recorded in the county where the land lies, and will not arise from a note in the mortgage index that a part of the mortgaged lands lies in an adjoining county where the mortgage is not recorded.

3. Where a tract of land composing one farm lying in two counties is subject to liens of record in each, and is sold discharged of liens by an

assignee for the benefit of creditors, the proceeds of the land in each county are to be distributed to the liens of that jurisdiction at the average price per acre at which the entire tract is sold.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MC-COLLUM, JJ.

Nos. 287, 288 January Term 1889, Sup. Ct.; court below No. . . . . . . . . . Term 1886, C. P.

On February 2, 1886, John W. Gibble made an assignment of his estate, real and personal, to Samuel R. Zug and John M. Stern, for the benefit of his creditors. In 1888, the assignees having settled their account, *Mr. Charles M. Zerbe* was appointed auditor to distribute the balance shown thereby to the creditors entitled.

At the hearing before the auditor, the facts upon which this controversy arose were in substance as follows:

By deed dated March 17, 1881, Christian C. Snyder conveyed a farm, the proceeds of which formed a portion of the fund for distribution, to John W. Gibble, for $11,000, taking on the delivery of the deed a purchase money mortgage of the same date for the sum of $6,000. This farm contained 216 acres and 92 perches, of which 32 acres and 10 perches lay in Lancaster county, the remaining part of it in Lebanon county. The mortgage was recorded in Lebanon county on March 19, 1881, the mortgage index describing the land as lying in "Londonderry township and Lanc. county." It was never recorded in Lancaster county.

On March 19, 1881, Gibble executed a mortgage upon the same farm to Thomas Logan for $2,000. This mortgage was recorded the same day in Lebanon county, but, like the former, was never recorded in Lancaster county. The index of this mortgage also noted that the lands lay "in Londonderry township and Lanc. county," as the foregoing one.

On September 7, 1882, Josiah Funck obtained a judgment in the Court of Common Pleas of Lebanon county against Gibble, for $1,220, and subsequently assigned the same to Jacob F. Oberholtzer. On July 21, 1887, this judgment was revived for the use of Jacob F. Oberholtzer, for $1,366.40.

On March 30, 1883, Henry Oberholtzer obtained a judgment in the Court of Common Pleas of Lebanon county against

Gibble, for $4,000, afterwards reduced to $2,000 by a payment credited. On April 5, 1883, this judgment was transferred by exemplification to Lancaster county, and there entered as a lien. Henry Oberholtzer died, and Jacob F. Oberholtzer, his executor, was substituted on the record of the judgment.

On April 9, 1885, Jacob F. Oberholtzer purchased from Christian C. Snyder the $6,000 bond and mortgage, and took an assignment of the latter, which he at once had duly recorded in Lebanon county.

In 1887, the next year after the assignment by John W. Gibble, for the benefit of creditors, his assignees by an order of the Court of Common Pleas of Lebanon county were authorized to sell all the real estate of the assignor. The portion of the Snyder farm lying in Lancaster county was worth much more per acre than that lying in Lebanon, and, to enable the assignees to sell the farm advantageously as a whole, all the creditors having liens in Lancaster county agreed that the land in that county should be sold discharged of liens, reserving however the right to claim payment of the same as liens out of the fund realized, with like effect as though the land were sold at a judicial sale. The Snyder farm was sold to John G. Stauffer, subject to the $6,000 purchase money mortgage as a first lien, for $2,875. The sale was afterwards confirmed. The last mentioned sum was the subject-matter of contention in this proceeding before the auditor, the fund not being sufficient to pay the Oberholtzer judgments and the Logan mortgage both.

There was no evidence to show that Henry Oberholtzer, when he parted with his money, had actual notice that Logan held his mortgage against Gibble, but the auditor ruled that he had constructive notice of it from the record of the mortgage and of all that the record disclosed, and that as the mortgage index showed that part of the land lay in Lancaster county, he had notice of that fact also. But the auditor was of the opinion that as Logan was also negligent in not recording his mortgage in Lancaster county, and thus may have led Oberholtzer to part with his money, he should therefore bear a part of the loss; and, having found as a fact that the Lancaster county land was worth $96 per acre, in order to do justice between the parties and to make what he considered a fair

division of the fund of $2,875, realized for the Snyder farm, less its proportionate part of the costs and expenses, he applied upon the Logan mortgage such sum as the Lancaster county land, in connection with the Lebanon county land, taking each acre at the same valuation, should have paid on the Oberholtzer mortgage. By this method of distribution the Logan mortgage received $728.41 from the land lying in Lancaster county, and the sum of $579.56 was applied in the same way to the Oberholtzer judgment.

To this report various exceptions were filed by Logan's executor and by Jacob F. Oberholtzer as executor of Henry Oberholtzer, and individually.

Said exceptions having been argued, the court, McPHERSON, J., filed the following opinion:

By deed dated March 17, 1881, John W. Gibble, the assignor, bought from Christian C. Snyder a farm containing about two hundred and sixteen acres, of which thirty-two acres lie in Lancaster county and the rest in Lebanon county. The deed contains the following language, "subject also to a bond and mortgage for part of said purchase money given by John W. Gibble to said Christian C. Snyder, bearing even date herewith for $6,000." The deed was recorded in Lebanon county on September 16, 1882, but was never recorded in Lancaster county. The mortgage thus referred to was dated March 17, 1881, and recorded in Lebanon county on March 19, 1881. It was never recorded in Lancaster county, but the mortgage index in Lebanon states the location of the premises to be "Londonderry township and Lanc. county." In April, 1885, it was assigned by Snyder to Jacob F. Oberholtzer, who owned it at the time of the assignment for creditors.

On March 17, 1881, Gibble made another mortgage of the whole farm to Thomas Logan to secure $2,000, which was recorded in Lebanon county on March 19, 1881. It was never recorded in Lancaster county, but the mortgage index in Lebanon contains a statement similar to that quoted above.

With the record in this condition, a judgment for $1,220, now owned by Jacob F. Oberholtzer, was entered against Gibble in Lebanon county only, on September 7, 1882; another judgment for $800 in favor of Peter Rider was entered in Leb-

anon county, on September 28, 1882, and in Lancaster county, on September 30, 1882; and a third judgment, now for $2,000, in favor of Henry Oberholtzer, was entered in Lebanon county on March 30, 1883, and in Lancaster county on April 5, 1883. None of these judgment creditors had actual notice that the mortgages covered the land in Lancaster county, and so far as appears they made no search for prior liens.

In February, 1886, Gibble made an assignment for the benefit of creditors, and his assignees had possession of the farm for about two years thereafter, during which they received certain income therefrom, which forms part of the fund for distribution. In September, 1887, they sold the farm under an order of the Court of Common Pleas of Lebanon county, the judgment creditors in Lancaster county releasing their liens in order to allow title to be made, but reserving their claims upon the fund as if the whole farm in both counties had been sold by order of court. The purchaser took the farm expressly subject to the Snyder mortgage of $6,000, which was deducted from his bid and which he paid in full about April 1, 1888.

The land lying in Lancaster county is considerably more valuable than an equal quantity of the land in Lebanon, but the two hundred and sixteen acres form one farm, have been used as such and were sold as a whole by the assignees for the lump sum of $9,775. The proceeds of this sale above the Snyder mortgage, the income derived therefrom by the assignees, and about $600 arising from the sale of personal property, are involved in this dispute, and the exceptions pressed require us to decide four questions:

1. Under the facts above stated, are Henry Oberholtzer and Peter Rider to be charged with notice that the Logan mortgage affected the land lying in Lancaster county?

2. How is the value of the Lancaster land to be estimated, in order to properly apportion the expenses of the trust? According to the price it would bring as a detached tract, or the price paid for it as a part of the entire farm?

3. Who is entitled to the income of the farm received by the assignees, and what proportion of it is to be considered as derived from the Lebanon land and the Lancaster land respectively?

4. Although Jacob Oberholtzer's mortgage has been paid in

full by the purchaser of the farm, is he still entitled to a dividend thereon out of the personal fund, in order to apply it to his judgment of $1,220, which will not even then be paid in full?

The first question seems to be clearly settled. One who is about to become an incumbrancer is bound to examine the record for prior liens. As was said in Taylor v. Maris, 5 R. 57 : " A mortgage or judgment is a lien ; the recording a mortgage or docketing a judgment is notice of that lien to a subsequent purchaser or incumbrancer, and he is bound to search for it. " So also in Maul v. Rider, 59 Pa. 171 : " It is sometimes said that the record of a deed is constructive notice to all the world. That, it is evident, is too broad and unqualified an enunciation of the doctrine. It is constructive notice only to those who are bound to search for it ; thus subsequent purchasers and mortgagees, and perhaps all others who deal with or on the credit of the title in the line of which the recorded deed belongs." The intending incumbrancer may of course neglect this duty, but if he does neglect it, he is nevertheless charged with actual notice of any relevant fact which a search would have disclosed: Kuhn's App., 2 Pa. 264 ; Pepper's App., 77 Pa. 377 ; Stephen's App., 87 Pa. 202, and this must include the contents of the instrument by which a prior lien has been created. " Whatever puts a party on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, as in case of purchasers and creditors, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding : " Maul v. Rider, supra. " Where inquiry becomes a duty, the party who neglects to perform it should be visited with at least constructive notice of the facts that would probably have been brought to light if it had been duly made :" Leonard's App., 94 Pa. 168 ; Hottenstein v. Lerch, 104 Pa. 454; McCandless v. Blakely, 12 W. N. 510. It therefore seems plain, that Henry Oberholtzer and Peter Rider, who were about to lend money on the security of land in Lebanon county, were bound to search the records of that county for prior incumbrances. If they had done so, they would have discovered, both from the mortgage index and from the body of the instrument itself, that the Logan mortgage covered land in Lancaster as well as in Lebanon, and

they would thus have had actual notice of that fact. They did not do so and thus were ignorant of it, but they cannot acquire an advantage by neglect of duty and must therefore be charged with notice of the fact which was plainly to be found precisely where they were bound to look. As to them, we must hold the Logan mortgage to be a prior lien upon the Lancaster land and entitled to be first paid. We have not considered the language in the deed referring to the Snyder mortgage, believing it to be unimportant in this controversy.

Upon the second question we are compelled to differ from the auditor. No doubt the Lancaster county land is more valuable than an equal quantity of the land in Lebanon county exclusive of the buildings; but the facts remain that the farm is a single tract, lying in one body, used together as one whole for one purpose, each acre thus affecting the value of every other. Without the buildings, which are in Lancaster, the land in Lancaster would be less desirable; and it clearly appears that the Lebanon land is worth less by itself than in connection with the Lancaster land. Some remarks of Mr. Justice CLARK in Potts v. Railroad Co., 119 Pa. 285, seem to be fairly applicable, and to sustain us in saying that this land must be treated as a whole, and not be separated by an invisible line, the result of which is to treat one part as if it were physically detached. In our opinion, the fairest and most practical way is to value the whole farm together at so much per acre, about $45 seems to be the value, and to apportion the expenses of the trust upon this basis.

The first branch of the third question is decided by Wolf's App., 106 Pa. 545. The income received by the assignees is to go to the liens which would be entitled to the proceeds of the land if sold. It must be divided, however, by the rule just stated, and not according to the value of the Lancaster land as a detached tract.

The fourth question must be answered in the affirmative upon the authority of Graeff's App., 79 Pa. 146, in which the precise point is decided.

So far as the exceptions filed are not sustained by this opinion, they are overruled. The report is referred back to the auditor to modify his distribution in accordance herewith; report to be made January 7, 1889.

On January 9, 1889, a second report of the auditor distributing the fund in accordance with the foregoing opinion was confirmed by the court and distribution ordered. Thereupon Jacob F. Oberholtzer, as executor of Henry Oberholtzer, deceased, and in his own right also, took these appeals, specifying that the court erred:

1. In deciding that Henry Oberholtzer had constructive notice that the Logan mortgage, which was recorded in Lebanon county only, embraced the land lying in Lancaster county, of the Snyder farm.

2. In deciding that the Logan mortgage, was a prior lien to the Henry Oberholtzer judgment, on the land of the Snyder farm, lying in Lancaster county.

3. In deciding that the Logan mortgage should be paid out of the rents, issues and profits, made by the assignees while they had possession thereof, and of the proceeds of the land itself lying in Lancaster county, before any part of them should be decreed to the Henry Oberholtzer judgment.

4. In holding, that the entire farm, as well the land lying in Lebanon as in Lancaster county, of the Snyder farm, should be valued alike; that is, about $45 per acre, without any regard to the relative value of the separate tracts.

*Mr. Josiah Funck*, for the appellant:

1. The Logan mortgage, having been recorded in Lebanon county only, obviously bound no more than the land in that county. The record in Lebanon county was constructive notice to purchasers and incumbrancers of what was properly recorded there, but no more. The statute, acts of May 28, 1715, 1 Sm. L. 95, and March 28, 1820, 7 Sm. L. 303, provides that mortgages shall be recorded "where the lands lie." If recorded in any other county, it is notice to nobody. This is a familiar principle: Wade's Law of Notice, §§ 192, 209, 548; Rich v. Roberts, 48 Me. 548; Crofut v. Wood, 3 Hun 571; 1 Story, Eq. J., 6th ed., § 404; 4 Kent, Com., 8th ed., 174; Peron v. Reed, 35 Vt. 3; King v. Porter, 77 N. C. 25; McKean etc. Imp. Co. v. Mitchell, 35 Pa. 269; Kerns v. Swope, 2 W. 75; Parret v. Shaubhut, 80 Am. Dec. 424; Main v. Alexander, 47 Am. Dec. 732; Astor v. Wells, 4 Wheat. 466; Simon v. Brown, 3 Y. 186; Heister v. Fortner, 2 Binn. 40;

Bolton v. Johns, 5 Pa. 145; Dawson v. Bigsby, 5 Binn. 204; Friedley v. Hamilton, 17 S. & R. 70; Green v. Drinker, 7 W. & S. 440; Phillipsburg S. B.'s App., 10 W. N. 265; Woodworth v. Paige, 4 Am. L. Reg. 634.

2. Clearly the lien creditors of the Lancaster county jurisdiction are entitled to the proceeds of the Lancaster county land, estimated at its actual value, less the proportionate part of the expenses of conversion and distribution. True, the whole farm was sold by the assignees as one tract, but the order of the Court of Common Pleas of Lebanon county conferred no power to sell the land in Lancaster county: John v. Cartee, 1 Pa. 147; they therefore sold the land in the latter county under the power conferred by the deed of trust alone, subject to the reserved right of the lien creditors to claim out of the fund. The farm, should hence be treated as two separate tracts, in consequence of the invisible line which divides the two counties and limits the jurisdiction of the courts of each. The principle is fair and just and in analogous cases it uniformly has been recognized and applied by this court: Fisher v. Clyde, 1 W. & S. 544; Carpenter v. Koons, 20 Pa. 222; Corporation etc. v. Wallace, 3 R. 109.

*Mr. John Benson*, for the appellee:

1. Had Oberholtzer searched the records of Lebanon county, the place where he was bound to search for liens or incumbrances, he would have found the Logan mortgage where the land covered by it was located. This would have put him upon inquiry, and upon examination the true state of the facts would have been disclosed. He either searched these records, or he did not. If he did, he had actual knowledge of the Logan mortgage, which certainly was notice of it; if he did not, it was his duty to do so, and he was affected with constructive notice: Taylor v. Maris, 5 R. 57; Maul v. Rider, 59 Pa. 171; Leonard's App., 94 Pa. 168; Hottenstein v. Lerch, 104 Pa. 454; McCandless v. Blakely, 12 W. N. 510; Stephen's App., 87 Pa. 202; Kuhn's App., 2 Pa. 264; Pepper's App., 77 Pa. 377.

2. All the buildings are on the part of the farm in Lancaster county; the farm is but a single tract lying in a body, with no division line or landmarks to separate it; it has never been

used in any other way but as a whole, each and every acre forming a part thereof and affecting the value of each and every other acre. The land in Lancaster county may be more valuable, yet it was not detached and sold separately, but as a whole. The learned court valued it at the average price per acre of what the whole farm sold for, which was fair, upon correct principles, and supported by Potts v. Railroad Co., 119 Pa. 285.

OPINIONS, MR. JUSTICE WILLIAMS:

No. 287.

This is a contest over the distribution of a fund raised by the assignees for the benefit of the creditors of J. W. Gibble. It embraces the proceeds of the sales of both real and personal estate. One of the farms sold by the assignees contained two hundred and sixteen acres, and was crossed by the line between Lancaster and Lebanon counties in such manner as to leave a little over thirty-two acres in Lancaster county while the remainder of the land with the farm buildings was in Lebanon. The deed of assignment was recorded in Lebanon and the order of sale was issued by the Court of Common Pleas of that county. The creditors in Lancaster entered into an agreement with the assignees by which they released their liens from the Lancaster county part of the farm so as to enable them to sell the farm as a whole, reserving their right to come in on the fund.

Gibble bought in March, 1881, and recorded his deed in Lebanon county soon after. On the same day that he obtained his deed he gave a mortgage to Logan which was recorded on the 19th of March, 1881, in Lebanon county, but was never recorded in Lancaster. It properly described the farm as lying in both counties, and in the mortgage index was an entry stating that the land lay in Londonderry township and Lancaster county. Oberholtzer's first judgment was entered in Lancaster county in 1882, and other judgments were entered subsequently.

Two questions are raised upon these facts. The first of these is over the basis upon which the proceeds of the farm shall be divided so as to ascertain the amount of the fund applicable to Lancaster county liens. The holders of these liens insist that

the land in Lancaster county is worth more by the acre than the Lebanon county land, and that they should be allowed to take so much of the price of the farm as they can show the thirty-two acres lying in that county to be worth. The court below held that inasmuch as the farm had been sold as a whole, the price was to be divided in proportion to the quantity of land lying in each county. We see no error in this mode of division. The purchaser had regard, in bidding, to the farm as a whole. Its buildings, improvements, fertile fields, and waste lands were considered as comprising one farm, upon which one price was put, and we see no reason why the division of the price should not be made upon the basis of the relative quantity as was done by the court.

The remaining question is whether the Logan mortgage is entitled to come in on the Lancaster county fund in preference to the judgments of Oberholtzer and others which were regularly entered in that county. If so, it is because, as the court below held, that the recording of the mortgage and its appearance in the mortgage index in Lebanon county is constructive notice to the subsequent judgment creditors in Lancaster. It is not pretended that Oberholtzer or any other of the Lancaster county lien holders had actual notice of the existence of the Logan mortgage when the debts due them were contracted, or their judgments entered. If they did not have constructive notice because of what appeared on the records of Lebanon county, they had no notice whatever.

The precise question raised is whether the recording of a mortgage in one county upon land in another is notice to creditors in the county where the land lies. The recording of a mortgage has no greater value as constructive notice than that which our recording acts give it. The act of 1715 requires that a mortgage shall be recorded within six months after its date in the county where the lands lie that are covered by it. The time allowed by the act of 1715 was found to be inconvenient, and the act of 1820 was passed which declared that mortgages shall have priority " according to the date of recording the same," and then provided that " no mortgage or defeasible deed shall be a lien until such mortgage or defeasible deed shall have been recorded or left for record." These acts plainly provide for recording mortgages in the county where

the land affected by them lies and denies to them the benefits of a lien on the land until they come actually into the hands of the recorder. No matter where else the mortgage may be recorded, if it is not on the records of the county where the land lies it is no lien upon that land except as to the mortgagor or persons who have actual notice of its existence. When it is recorded in the proper county, then as to all persons dealing with the land as purchasers or lien creditors actual notice of the mortgage is not necessary, because they are fixed with notice by the record. Actual notice may be given in any county, because it brings knowledge home to the person to be affected by it. Constructive notice, on the other hand, results from the fact of recording in the county where the land lies and cannot extend beyond the county in which the record is made.

The Logan mortgage though recorded in Lebanon county is as to the county of Lancaster an unrecorded mortgage, and nothing but actual notice to the creditor before his debt is contracted will save its priority in that county: Nice's App., 54 Pa. 200. The want of actual notice being conceded, and the want of constructive notice being settled as the result of the failure to record in Lancaster county, it is clear that as to the Lancaster county lands, Logan is simply a specialty creditor, with no lien as against the appellant and others who are the holders of liens in that county. The first, second, and third assignments of error are sustained.

> The decree of distribution as to the fund raised from the sale of the Lancaster county land is reversed, and the record remitted for distribution in accordance with this opinion.

## No. 288.

The questions involved in the appeal in this case have been fully disposed of in an opinion just filed in the appeal of Oberholtzer, executor of Henry Oberholtzer, deceased. For the reasons there given, which it is unnecessary to repeat, the decree in this case is reversed as to the fund raised from the Lancaster county lands, and distribution thereof is ordered in accordance with the opinion in said case.