Statement of Facts.

## ASSIGNED ESTATE OF JOHN W. GIBBLE.

APPEALS BY J. F. OBERHOLTZER FROM THE COURT OF COMMON PLEAS OF LEBANON COUNTY.

Argued February 21, 1890—Decided April 28, 1890.
[To be reported.]

1. When, by common consent, a basis of valuation has been adopted in the payment of a common encumbrance out of the proceeds of a tract of land, parts of which were separately subject to subsequent liens, it must be adhered to when the balance of the fund comes to be apportioned between the liens against the different portions of the land.

(a) Assignees for the benefit of creditors sold, as a whole, a tract of land divided by a county line. The entire tract was subject to a mortgage which was the first lien. Subsequent liens were entered in each county, no lien creditor except the first having a lien on the entire tract. By agreement, the junior liens were discharged by the sale :

2. The amount of the first lien having been deducted from the purchaser's bid, by consent of all parties, the residue of the purchase money, and the profits of the land prior to the sale, must be apportioned between the junior liens against the different parts of the land, upon the basis of the price received per acre for the land as a whole.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

Nos. 244, 245 January Term 1890, Sup. Ct.; court below, number and term not given.

On February 2, 1886, John W. Gibble made an assignment of his property for the benefit of creditors. Among the assets thereby transferred, was a farm containing 216 acres and 92 perches, of which 32 acres and 10 perches lay in Lancaster county and the remainder in Lebanon county. The buildings erected upon the farm were on the Lebanon county part of it. The entire farm was subject to a purchase money mortgage for $6,000, in favor of Christian C. Snyder, which was the first lien upon the whole. Other liens, subsequent thereto, in favor of Thomas Logan's estate and other creditors, were entered in Lebanon county and bound that part of the land lying therein; and Jacob F. Oberholtzer held two judgments entered in Lancaster county, one of them in favor of himself individu-

Statement of Facts.

ally, and the other as executor of Henry Oberholtzer, deceased, which were the second and third liens, respectively, upon the Lancaster county part of the land.

In the execution of their trust, the assignees obtained from the Court of Common Pleas of Lebanon county an order for the sale of all the real estate of the assignor. Under this order they sold said farm to John G. Stauffer, subject to the $6,000 mortgage, which was to be deducted from the amount of the purchaser's bid. The sum realized to the assignees from the sale was $2,875. The Lancaster county lien creditors afterward released the land so sold from their liens, reserving the right to claim payment of the same out of the fund realized, with like effect as though said liens were discharged by judicial sale.

On June 7, 1888, the account of the assignees having been settled and confirmed, the court below appointed *Mr. Charles M. Zerbe* auditor, to make distribution of the balance shown thereby among the creditors entitled to it. The auditor found that the value, by the acre, of the Lancaster part of the 216 acre tract was far in excess of the value of the Lebanon portion, the former being worth $96 per acre, at least, and reported a distribution by which the proceeds of sale of the farm in the hands of the assignees, and the income received by them therefrom, prior to the sale, were apportioned between the Lancaster county and the Lebanon county liens, upon the basis of that valuation. Exceptions to his report, after argument, were sustained by the court below, in an opinion by McPherson, J., holding, inter alia, that the farm must be valued as a whole at so much per acre, and the expenses of the trust apportioned upon that basis, and that the income must be divided according to the same rule, and not according to the value of the Lancaster land as a detached tract; referring the report back to the auditor to modify his distribution in accordance with the opinion. The auditor thereupon filed a second report making distribution in accordance with the opinion of the court, which report the court confirmed, ordering distribution as therein made.

Upon appeals by Jacob F. Oberholtzer, executor of Henry Oberholtzer deceased, and Jacob F. Oberholtzer, individually, at Nos. 287, 288 January Term 1889, the Supreme Court sus-

Auditor's Report.

tained the rule laid down in the opinion of the court below for the valuation of the farm and the apportionment of its price, but reversed the final decree upon another point, remitting the record for distribution in accordance with the opinion of Mr. Justice WILLIAMS, filed March 18, 1889: Oberholtzer's App., 124 Pa. 583.

Upon the return of the record to the court below, the case was again referred to the auditor, to make distribution in accordance with the opinion of the Supreme Court, and on April 22, 1889, the auditor filed a third report, in part as follows:

Mr. Funck, as counsel for the Oberholtzers, presented the following points for the consideration of the auditor and also made the offers of testimony accompanying said points:

"1. The auditor is respectfully requested to decree the proceeds of the land of the Stauffer farm, estimated at its actual value, lying in Lancaster county, after deducting the proportionable part of the expenses of the trust, etc., to the Oberholtzer judgment entered in that county, all the other liens in that jurisdiction having been paid; the value of the Lancaster county land to be determined by the evidence already taken by the auditor, and such further testimony as any of the claimants to that fund may see fit to submit.

"2. If the auditor cannot distribute the fund produced by the sale of the land of the Stauffer farm, lying in Lancaster county, as requested by the preceding point, then we ask him to distribute the proceeds of the entire farm among the lien creditors of the two counties, applying to the Lancaster county liens the proceeds of the land lying in that jurisdiction, after determining the amount thereof according to the actual relative value of each tract, assuming that the entire farm was sold at $45.00 per acre.

"The attorney of Jacob F. Oberholtzer, executor, etc., of Henry Oberholtzer, deceased, now proposes to call John Stauffer, the purchaser of the farm, to prove by him that the land of the farm which he purchased, lying in Lancaster county, is worth $100 per acre, and that he would have paid for it that sum if the same had been sold separately by the assignees; and that the land of the same farm, lying in Lebanon county, is not

worth more than $35.00 per acre, and that he would not have
offered that much for it if the same had been sold by itself by
the assignees."

As the auditor's powers in this distribution are limited to a
"distribution in accordance with the opinion of the Supreme
Court," by which alone he must be guided, he cannot consider
the points submitted. The points submitted by Mr. Funck,
as well as the offers of testimony, made by him, are therefore
overruled.

Mr. Benson submitted the following for the consideration of
the auditor:

"Both reports of the auditor decreeing a certain distribution,
were reversed and set aside and an order was made directing a
new distribution, in accordance with the opinion filed in this
case, and a distribution must be made of the proceeds and
products and income of the land (Stauffer farm) in accordance
therewith."

Mr. Benson also claimed, that under the opinion of the Su-
preme Court, the auditor must value, apportion, ascertain and
distribute the income of the Stauffer farm, according to the rule
laid down by the court in respect to the valuation of the land
itself; or, in other words, that he must ascertain the average
income, per acre, and then credit each part of the farm with
such part of the whole income as its acreage would entitle it to.

The order is, "to make distribution in accordance with the
opinion of the Supreme Court." To ascertain what this order
means, the auditor is of the opinion that it will be necessary to
review the matter contained in the record from and including
his first report of distribution. In his first report the auditor
found as a fact, from the testimony then before him, that the
income of the Stauffer farm must be apportioned according to
the valuation he had put upon the Lebanon and Lancaster
lands of that farm, respectively. He ascertained the respective
amounts of that income and distributed them accordingly, de-
creeing to the Logan mortgage $612.23, as the net income of
the Lebanon lands, and to the Henry Oberholtzer judgment
$298.07, as the net income of the Lancaster lands. To this
finding and distribution no exceptions were filed. The court
below, however, in an opinion filed December 20, 1888, directed
that the income of the Stauffer farm must be divided by the

rule laid down by it in the valuation of the farm as a whole. This direction of the lower court was made a part of the 3d assignment of error by the plaintiff, the said Jacob Oberholtzer, executor, etc., of Henry Oberholtzer, deceased, and this assignment of error is sustained by the Supreme Court in the opinion filed March 18, 1889. Nor is this all. The Supreme Court reverses "the decree of distribution as to the fund raised from the sale of the Lancaster county land" of the Stauffer farm. There is no rule laid down by the Supreme Court in relation to the division of the income, nor is there any reference to the income in the opinion, unless the expression "sales of both real and personal estate" in the second sentence, can be construed as such.

The auditor is therefore of the opinion that the rule laid down by the Supreme Court, as to the valuation of the land itself, does not apply to the income, and that his first finding and distribution of the income has not been disturbed. What the purchaser had regard to, the farm as a whole, in bidding,— its waste lands and fertile fields, etc., comprising one farm,— has no relation whatever to the quantity and value of the crops raised on the respective parts of the farm, which were not sold for a lump sum. The quantity and value of crops depend upon the fertility and productiveness of the soil. An acre of rocky hill-top, used as pasture, covered with brambles and without water, when sold in connection with other and fertile acres for a lump sum, may, under certain circumstances and for certain purposes, be valued at the average price per acre, but it does not follow that the crops raised on the former are as good, large and valuable, by the acre, as those raised on the fertile land. The valuation put upon the land and the crops was based upon the testimony as to the value of the crops the first and second years, the fertility and quality of the respective parts of the farm, the amount of waste and comparatively waste land, etc. Had accounts of the crops been submitted, there is no doubt that they would have shown the value of the Lancaster crops to be in excess of the auditor's estimate. There was testimony that even the good Lebanon land "does not yield as good returns" as the Lancaster land. It can be shown that a calculation based upon the first and second years' crops, allowing a certain sum for the value of the pastured lands,

Opinion of Court below.

and the acreage of the available lands of this farm, will establish, substantially, the accuracy of the auditor's valuation of the land and the crops or income. His valuation of the land, for reasons given in the opinion, was held to be erroneous, but as those reasons do not apply to the income, he will adhere to his first finding in regard to the income and his distribution thereof, and will distribute it accordingly, subject to the proportionate shares of the costs and expenses incurred since the filing of the first report. The fund realized from the sale of the real estate, or land of the Stauffer farm, will be divided strictly in accordance with the opinion of the Supreme Court, subject to proportionate shares of all charges, costs and expenses of the trust, former audits, appeals, and this audit. . . . . .

To this report, Jacob F. Oberholtzer filed exceptions, alleging that the auditor erred: 1. In not distributing the proceeds of that part of the land lying in Lancaster county, in accordance with the first request of the exceptant, quoted in the report.[2] 2. In not distributing the proceeds of the entire farm as requested in the second request of the exceptant.[3] The executor of Thomas Logan, deceased, excepted to the action of the auditor in distributing the income of said farm according to the relative value per acre of the land, as found by the auditor in his former reports.[1]

After argument, the court, McPHERSON, J., filed the following opinion and decree:

The exceptions of Jacob F. Oberholtzer, individually and as executor, are overruled. The precise question they raise was decided by the Supreme Court in this very case: 124 Pa. 583, and a re-argument thereon refused.

The exceptions of Thomas Logan's executor must be sustained. It is undoubted, that the income of the Stauffer farm must go to the liens, which would be entitled to the proceeds of the land if sold: Wolf's App., 106 Pa. 545. That is, in the present case, part must go to the Lancaster creditors and part to the Lebanon creditors. How, then, is the division to be made? How are we to determine the income per acre? If it were possible to take each acre separately, and say specifically just how much money and labor were put upon it, and then to

say specifically just how much it yielded in grain or other crops; if, further, each acre could be charged with its exact share of the general expenses of the farm, and could be credited with the money received from the precise articles it produced, we might then feel that the result thus reached was, nearly enough, the income of that acre. For the present, however, we must be content with estimates, and the method which commends itself to us follows the rule by which the value of the land itself was reached, viz., the rule of averaging the farm as a whole. Why the income should be divided among the lien creditors as if the Lancaster land was worth $100 an acre, while the proceeds derived from the sale of the land itself is divided among them at the rate of $45 per acre, we do not understand. In the case before us we have simply to choose between methods of estimating, and in our opinion the method approved by the Supreme Court, in apportioning the money derived from the sale of the land, ought also to be applied in apportioning the income of the land. This particular question was not formally decided in the appeals heretofore taken. As the appellant's paper-book states, only two questions were then raised and argued, and this is not one of them.

The report is referred back to the auditor, with instructions to distribute the income of the Stauffer farm in accordance with this opinion.

The auditor accordingly reported an amended distribution, appropriating the income, as well as the proceeds of sale, in accordance with the opinion of the court below, and on January 6, 1890, the court, McPHERSON, J, entered a decree confirming said report of distribution, and ordering that the money in the hands of the assignees be paid out as therein directed. Thereupon Jacob F. Oberholtzer, as executor and in his own right, respectively, took these appeals, specifying that the court erred:

1. In sustaining the exception of Logan's executor.[1]

2, 3. In not sustaining the appellant's exceptions.[2] [3]

*Mr. Josiah Funck*, for the appellant:

1. The Lancaster lien creditors are entitled to the whole of the income of the portion of the land to which their liens attached. Eighty-four acres of the land in Lebanon are poor and unpro-

ductive, and to award the same amount of income to these, as to the fertile fields in Lancaster, is unjust. If the Lancaster land had been sold separately, beyond question the income thereof would have been applied to the judgments which encumbered it, in the order of priority: Wolf's App., 106 Pa. 545. How the sale of the land, in one body, can affect the vested rights of the lien creditors, we fail to see. This is carrying the rule of per acre distribution beyond the verge of reason. If the ruling of this court in Oberholtzer's App., 124 Pa. 583, sustaining the third assignment of error therein, does not support our position as to the income, it at least leaves the question open for decision upon principle now.

2. We ask a reconsideration of the decision in Oberholtzer's Appeals, as to the per acre basis of distribution of the proceeds of sale of the farm. A sale by the assignees should not be allowed to produce a different result in the distribution, from a sale under the appellant's judgments. To demonstrate the injustice of the decision, suppose some one had bought five acres of land in Lancaster county and erected thereon a furnace worth $100,000, charging it with judgments to the amount of $75,000; and, desiring more land for his purpose, he afterward purchased ninety-five acres in Lebanon county, adjoining his first purchase; and that, subsequently, assignees for the benefit of creditors sold the entire tract for $120,000: apportioned upon the same basis that has been adopted in this case, the Lancaster lien creditors would receive but $6,000 ! And yet such liens would be regarded by a trustee as unquestionably secure investments. This would be confiscation.

3. The decision by this court is not put upon anything that Oberholtzer did to imperil his security, and he has done nothing of the kind. In releasing his liens upon the land, which was after the sale was made, he expressly reserved his rights against the fund thereby produced, with like effect as if the lien had been discharged by judicial sale. He was powerless to prevent the sale of the land as a whole. The decision contravenes an unbroken rule of law established by this court and the courts of New York and New Hampshire, as is clearly shown by the cases we shall hereafter cite. Moreover, we think the present question was not fully considered then, being overshadowed by the other question then involved.

4. That if Gibble himself had sold the entire farm at $45 per acre, and his title to the Lancaster land had failed, the purchaser could have defended against payment of the purchase money to the extent of his actual loss, ascertained by determining the relative value of the Lancaster portion, as compared with the consideration paid for the entire tract, and would not have been limited to $45 per acre, is clear : Morris v. Phelps, 5 Johns. 49 ; Guthrie v. Pugsley, 12 Johns. 126 ; Fumess v. Ferguson, 1 Smith (N. Y.) 437 ; Lee v. Dean, 3 Wh. 316 ; Beaupland v. McKeen, 28 Pa. 124. The same doctrine applies to the apportionment of a mortgage charged upon an entire tract, which is afterwards subdivided and sold under a junior judgment, each tract bearing its proportion of the lien according to its value at the time of sale : Fisher v. Clyde, 1 W. & S. 544 ; Carpenter v. Koons, 20 Pa. 222 ; Corporation v. Wallace, 3 R. 109. To sustain this decree, these authorities must all be overruled.

*Mr. John Benson*, for the appellee :

The assignments of error raise but a single question, which is precisely the same as that determined in Oberholtzer's App., 124 Pa. 583, and these appeals are ruled by that decision. Although the particular point as to the income may not have been formally decided upon the former appeals, it is governed by the same principle. We invoke the doctrine of stare decisis.

OPINION, MR. JUSTICE WILLIAMS :

These cases were here one year ago, and are reported in 124 Pa. 583. We are now asked to reconsider the decision then made, on one of the questions presented. The facts on which the question is raised are unchanged, and are as follows :

In the year 1881, John W. Gibble bought from Christian C. Snyder a farm containing 216 acres for the price of $11,000. Of this purchase money, $5,000 appear to have been paid, and a bond and mortgage were given to secure the payment of the remaining $6,000. One hundred and eighty-four acres, with the farm buildings thereon, were in the county of Lebanon, and 32 acres were in Lancaster county. These parts were separated only by the county line, and together constituted one farm, which was bought, occupied and farmed as a whole. Gibble recorded his

deed, and Snyder his mortgage, in Lebanon county, where both lived. On the same day that he executed the Snyder mortgage, Gibble also executed one to Logan for $2,000, which was recorded in Lebanon county. Subsequently, judgments were entered in Lancaster county, which are now held by Oberholtzer. Neither of the mortgages was recorded in Lancaster, but Snyder made his deed subject to the "bond and mortgage for part of said purchase money given by said John W. Gibble to Christian C. Snyder, bearing even date herewith, for six thousand dollars." The whole farm was thus subject to a lien for the unpaid purchase money secured by the Snyder mortgage. The 184 acres in Lebanon were subject, also, to the Logan mortgage. The 32 acres in Lancaster were covered by the judgments now owned by Oberholtzer, subject to the Snyder mortgage. This was the situation when, in 1886, Gibble became insolvent, and made an assignment of his property, real and personal, for the benefit of his creditors. The assignment was recorded only in Lebanon county. In 1887, under an order of court made in Lebanon county, the assignee sold this farm at public sale. To enable him to make title to the purchaser for the whole farm, the holders of the Lancaster county judgments consented to and ratified the sale so made, reserving their right to come in on the fund. The farm was advertised and sold as one farm. The terms of sale provided that the title was to be made subject to the Snyder mortgage, and its amount deducted from the purchaser's bid. The sale was made at $9,775. Of this sum, $6,900 were appropriated to the Snyder mortgage, and the amount paid to the assignee was what was left, viz., $2,875. This makes the larger part of the fund now for distribution.

Who is entitled to this money? The court below originally held that the Logan mortgage should be paid, and that the remainder should be divided into two parts, bearing the same proportion to each other as that between the quantities of land in the respective counties. We reversed the court below, holding that the Logan mortgage was a lien only upon the land in Lebanon county, where it was recorded, and that the entire fund should be divided in proportion to the acreage in the respective counties. Upon that part of it which would thus represent the part of the farm lying in Lebanon county, the Logan mortgage would have priority over the Lebanon judgments.

Opinion of the Court.

That part of the fund representing the land in Lancaster county would be applicable to Oberholtzer's judgments. The record was returned to the Court of Common Pleas of Lebanon county, and distribution was made in accordance with our direction. The case is now here for the purpose of securing another hearing upon the subject of the basis on which the fund should be divided. The appellant asks that the relative value, by the acre, of the land in Lancaster, be ascertained, and that the division of the fund be made on that ground. He alleges that the Lancaster lands are worth more than twice as much per acre as those in Lebanon, notwithstanding the fact that the buildings are all in the latter county, and that he should be allowed to share in the fund accordingly.

It must be borne in mind, in determining this question, that the fund was raised by a sale of the farm as a whole, and not in parts. If the Lancaster creditors had sold the land in that county separately, they could, perhaps, have secured a larger price per acre than could have been got for the whole farm if they could have made title; but the Snyder mortgage was a common burden, resting on and covering every acre in both counties, by virtue of the provision in the deed to which we have referred. A sale in Lancaster would therefore have been subject to the lien of the mortgage, and to the necessity of providing for its payment. The shortest, the simplest, indeed the only practicable, way for the Lancaster lienholders to realize anything upon their liens, was to do just what they did do; let the assignee sell the whole farm subject to the lien of the mortgage, and secure their share of the surplus left after the mortgage was out of the way. The purchaser's bid was $9,775. Nearly $7,000 of this sum was applied to the mortgage, without any calculation of relative values, and it would be clearly inequitable to permit such a calculation now. If the Lancaster county lands are worth twice as much per acre as those in Lebanon, they should bear the common burden at that rate, before they ask to participate at that rate in the little balance left after that burden has been discharged. But they left the mortgage to be paid or provided for out of the fund generally, without any calculation of values. They do not now propose to carry any more than their pro rata share of the burden, but they want more than a pro rata share of the surplus.

To state such a proposition is sufficient to illustrate its want of fairness.

It is a work of supererogation to add that the rule laid down in this case has no relation to that held in Carpenter v. Koons, 20 Pa. 222, or Beaupland v. McKeen, 28 Pa. 124. The startling consequences suggested by the learned counsel for the appellant, as likely to result from our ruling, are built upon a mistaken idea of what our ruling really is. We overturn no case. We lay down no general rule for distribution. We only say that a basis of valuation which has, by common consent, been adopted in the payment of common encumbrances, must, in fairness to all parties, be adhered to when the distribution of a balance of the fund comes to be made. The Lebanon land has been allowed to pay its share of the mortgage as of equal value by the acre with that in Lancaster. It must draw its share of the surplus on the same pro rata basis. We adhere, therefore, to what was said when this case was here before; and, as the distribution in the court below was in conformity with the views then expressed,

The judgment is affirmed.

Mr. Justice STERRETT and Mr. Justice CLARK, dissented.