# Appeal of Matilda Martin and Obediah Jacobs in the Matter of the Assigned Estate of George Smith and Wife.

*Assignee's sale—Land in different counties—Equitable distribution.*

Where lands are sold by an assignee as one lot, although consisting of parcels in two adjoining counties, subject to liens in each county, distribution in proportion to values would seem to be the normal rule, to be departed from only in exceptional cases; such distribution will give to the respective incumbrances the fund actually produced by the land on which they are respectively liens.

*Assigned estates—Assignee's sale—Land in adjoining counties—Distribution.*

Land consisting of a farm situated in two counties, and a parcel in one county not contiguous to the first, were sold as one lot at so much per acre. Buildings were erected on the Adams county portion of the farm, increasing the acreage value, which apart from the buildings was about equal to that of the York county portion. There were liens in the respective counties which presented questions of priority at the time of distribution. The fund was not sufficient to meet all of said liens. *Held*, that the distribution should be made on the basis of value and not of quantity.

Argued March 11, 1896. Appeal No. 17, March T., 1896, by Matilda Martin and Obediah Jacobs, from the order and decree of C. P. Adams Co., sustaining exceptions to auditor's report in the matter of the assigned estate of George Smith and wife. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed. RICE, P. J., and WILLARD, J., dissent from the opinion of the court so far as the same reverses the action of the court below in distributing the proceeds of the sale of lot No. 1.

Exceptions to the report of W. C. Sheely, auditor appointed to make distribution of the balance in the hands of Daniel F. Stitzel, assignee in trust for the creditors of George Smith and wife.

Before McPHERSON, J., specially presiding, who sustained the exceptions in the following opinion.

The fund for distribution, which consists entirely of the proceeds of real estate, was produced by the sale of three tracts of

land; No. 1, a farm lying partly in Adams county and partly in York county; No. 2, a tract of land containing twenty-one acres, lying in York county, not contiguous to the first tract but used with it for some years by the assignor as one farm, and No. 3, a tract of woodland, also in York county, containing about twenty acres.   There is no controversy with regard to the proceeds of the woodland.   The dispute concerns the fund produced by the sale of the other two tracts, and arises out of the fact that the judgments against the assignor are not equally extensive in lien.   Some are entered in York county only, some in Adams county only, and three are entered in both counties; so that it becomes important to decide how much of the fund was produced by the land lying in each county respectively, and is therefore applicable to the liens which are entered therein.

Tract No. 1, which contains about one hundred and thirty-six acres, is divided into two nearly equal parts by the public road which forms the line at this point between the two counties.   The buildings are in the county of Adams, but the tract has been one farm for thirty or forty years.   Tract No. 2 was offered separately by the assignee; thus detached it found no bidder.   It was then offered together with tract No. 1—the two having been cultivated as one farm for several years—and the whole farm of one hundred and fifty-seven acres was thereupon sold as one body of land at the uniform price of $41.50 per acre.   There is no evidence that any effort was made to sell separately, or that any person offered to buy, the parts of tract No. 1 lying in either county respectively.   Here, then, we have a fact with reference to the value of the property which cannot be disregarded.   It was actually sold for $41.50 per acre, and it is this money which is in court for distribution. The auditor, however, believing that the true value of the land had not been ascertained by the sale, heard testimony on the subject and decided that the York county part of tract No. 1 was worth only $28.50 per acre, and that tract No. 2 was worth only $23.50 per acre.   Inferentially he must have concluded— although there was no testimony upon the subject and he does not find it formally as a fact—that the Adams county part of tract No. 1 was worth $60.00 per acre; for the distribution is made upon this basis.

To my mind the question at issue is so plain that argument

is only likely to obscure it, but the report of the auditor puts his view with so much plausibility that a brief discussion may not be out of place. The weakness of his position seems to me to be this: He abandons the ground of reasonable certainty and prefers to rely upon inferior evidence concerning the value of the farm. In point of fact the land did sell for $41.50 per acre; at a public sale a purchaser was willing to give that much for each acre of ground, and that much has been paid into the hands of the assignee. No good reason appears why the actual event is to be disregarded in favor of conjecture as to how much the land would have brought if it had been sold in parts. A sum actually bid and actually paid down is ordinarily the best evidence of what a piece of land is worth. Probably if the farm should be cut into two portions, and if the York county part should be offered as a separate tract, it would sell for even less than the sum per acre at which the witnesses are disposed to value it. If tract No. 2 should be offered separately it is altogether probable that no purchaser would be found for it at all; for that was the assignee's experience at the sale in question. It may be true also that the Adams county tract, if sold separately with the buildings upon it, might produce what the auditor apparently regards it to be worth. But I do not feel justified in considering these contingencies. They did not happen; the property was put up as a whole, and as a whole it was sold at the price per acre which has been specified.

Neither is it useful to speculate concerning the reason which may have induced the purchaser to give this price per acre. One reason is no doubt to be found in the fact that the buildings in Adams county gave value to each acre of the farm in either county; but this is not a fictitious but an actual value, to which the York county creditors are as much entitled as they are to the value which inheres in the soil itself. It is an element of value which may easily disappear, and would certainly disappear if the farm should be cut into two separate tracts; but as long as the land stands together as one body the value exists and is as real, although not as permanent, as any other element. When the lien creditors advanced their money upon the security of this land—and it may be observed in this connection that tract No. 1, at least, was being used as one body of land when each judgment was entered—they are presumed to

have been acquainted with its situation; and, as sensible men, they must have known that the portion of land lying in the county of York necessarily felt a favorable effect from the buildings in the county of Adams.

The precise question now before the court was decided in Oberholtzer's Appeal, 124 Pa. 583. The auditor admits that if this case is still a binding authority it rules the point in controversy; but he believed it to be so far qualified by Gibble's Estate, 134 Pa. 366, that he felt justified in disregarding it. I am unable to agree with this view. The two decisions were made upon identical facts arising in the settlement of the same assigned estate. Undoubtedly the later decision sustains the distribution by bringing forward a fact whose importance had been overlooked when the case was first decided, and thus gives an additional reason why the first decision was right. But the court is careful to say distinctly that it makes no change in what was said when the case was previously heard; and this can only mean that the authority of the former decision is unimpaired. The following quotation from Oberholtzer's Appeal contains the ruling to which the court's approval was thus given: " The first (question) is over the basis upon which the proceeds of the farm shall be divided so as to ascertain the amount of the fund applicable to Lancaster county liens. The holders of these liens insist that the land in Lancaster county is worth more by the acre than the Lebanon county land, and that they should be allowed to take so much of the price of the farm as they can show the thirty-two acres lying in that county to be worth. The court below held that, inasmuch as the farm had been sold as a whole, the price was to be divided in proportion to the quantity of land lying in each county. We see no error in this mode of division. The purchaser had regard, in bidding, to the farm as a whole. Its buildings, improvements, fertile fields, and waste lands were considered as comprising one farm, upon which one price was put, and we see no reason why the division of the price should not be made upon the basis of the relative quantity as was done by the court." No doubt the circumstances of that case were exceptional, as is said in Jones' Estate, 169 Pa. 292; but the circumstances of this case are similarly exceptional, and call for the application of the same rule as was then applied.

It may be also noted that in Jones' Estate the equity of the decision in Carpenter v. Koons, 20 Pa. 222, is questioned, although the ruling is followed because it has stood for many years; and it is plainly intimated that, where a considerable body of land charged with a common incumbrance is divided, it would be more satisfactory if the charge should be apportioned according to acreage rather than according to estimated value. But as the rule of Carpenter v. Koons (although the auditor apparently cites it in support of his conclusion) has no relation to the rule to be applied in the present case, this subject need not be pursued.

The auditor seems also to think that the act of 1840, sec. 12, P. L. 692, provides for a different method of distribution when the property is sold upon execution; and very properly suggests that one principle of distribution should not be applied when the property is sold upon execution, and another principle when the sale is made by an assignee under an order of the court. I am unable to agree, however, with this construction of the act of 1840. The statute provides that when any part of any lands or real estate which lie in one or more adjoining tracts in different counties is taken in execution, the sheriff must summon an inquest in order to inquire whether the part taken in execution can be sold separately from the other part lying in the adjoining county without prejudice to the whole, or to the interest of the defendant or any of his lien creditors, or of any other person who may be interested in the proceeds; thus distinctly recognizing that land lying in two counties may, nevertheless, be a unit, and not merely two unrelated tracts, and that the defendant and his creditors have an interest in determining in what manner the property is to be sold. If the inquest and the court agree that the part taken in execution cannot be sold separately from the other part lying in the adjoining county without prejudice to the interests above referred to, provision is then made for the sale of the property as a whole and for the return thereof to the court. Thereupon, if there are liens upon the land in the adjoining county, the court— instead of being obliged to distribute the fund according to the value of the parts as if they had been separately sold and were to be separately appraised—is enjoined to " ascertain and determine in such manner as they think proper what proportion of

72 ASSIGNED ESTATE OF SMITH et Ux.

Opinion of Court below—Arguments.  . [2 Super. Ct.

the proceeds of such sale shall be applied in satisfaction of such previous liens." This commits the distribution to the court as fully as the distribution is committed after the return of sale by an assignee, and does not lay down a statutory rule, as the auditor seems to suppose.

It is possible (as his reference to it seems to indicate) that the auditor may have been influenced in some degree by the ingenious supposition of the appellant's counsel in Gibble's Estate. If he had not been misled as to the scope of the act of 1840, I think he would have seen clearly that the imagined consequences are not only "startling," as the Supreme Court characterized them, but quite impossible. No court would permit the property there described (which is not at all like a farm) to be sold as a whole, but would preserve carefully the rights of the original lien creditors, as it has full power to do under the act when it comes to consider the report of the inquest, and to decide whether the land ought to be sold as a whole or in parts.

Neither does it follow that the rule which is now to be enforced must always be applied upon distribution. Equitable rules often govern the process of distribution, the general purpose of which is to produce results which are fair and just. If in any case unfairness or injustice would be the result of apportionment according to acreage, it would certainly be laid aside in favor of a better method. But upon the facts now presented before the court, I think it is the true, because it is the equitable, method.

The report is referred again to the auditor, with instructions to distribute the fund in accordance with this opinion; report to be made within ten days, whereupon the prothonotary will enter a formal decree of confirmation and distribution, from which an appeal may be taken.

*Errors assigned* were (1–6) sustaining exceptions to the auditor's report.

*J. L. Williams* and *S. S. Neely*, for appellant.

*Wm. McClean*, with him *Wm. Arch. McClean* and *Wm. P. Quimby*, for appellee, relied on the opinion of the court below:

Potts v. R. R., 119 Pa. 278 ; Oberholtzer's App., 124 Pa. 583 ; Gibble's Est., 134 Pa. 366 ; Jones' Est., 169 Pa. 392.

OPINION BY SMITH, J., July 16, 1896 :

George Smith and wife having made an assignment for the benefit of creditors, the assignee, under an order of the Adams county common pleas, made public sale of the assigned real estate. The controversy here is with respect to the proceeds of two parcels, thus described in the assignee's petition : " Tract No. 1.—A farm situate on the dividing line between the counties of Adams and York, about 69 acres of which, with all the buildings and improvements, are situate in Latimore township, Adams county, and about 67 acres of said farm are situate in Franklin township, York county, aggregating in the whole farm about 136 acres. Tract No. 2.—Improved land situate in Franklin township, York county, containing about 21 acres." The assignee returned that he had sold these as one tract for $6,557, and his return was confirmed by the court.

At the date of the assignment there were judgments against the assignor in both counties. The question is whether they shall share in the proceeds of sale in proportion to the quantity of land on which they were respectively liens, or in proportion to its value.

Before the auditor, it appeared that upon the sale tract No. 2 was first put up separately without eliciting any bid, and that the two tracts were then put up and sold together. The bidding was by the acre, and the land was struck down on a bid of $41.50 an acre. By a subsequent survey the acreage was found somewhat larger than had been supposed, and for the excess the purchaser paid $45.39. It further appeared that tract No. 1 had been used as one farm for upward of thirty years, and that No. 2 was not contiguous to it, but had been cultivated by the assignor during his ownership of both tracts. It was admitted, and found as a fact by the auditor, that apart from the buildings the portions of tract No. 1 in each county were of equal value —$28.50 an acre; and the testimony abundantly sustains his finding that tract No. 2 was worth but $23.50 an acre. The auditor apportioned the fund to the judgments in the two counties in proportion to the value of the land in each county. The court below directed distribution in proportion to the acreage.

In choosing between these methods, it will be proper to consider the results to which each will lead. Where all portions of a tract are of equal value, it is immaterial which method is adopted, since they will produce like results. But where there is a disparity of values between different portions, equality of quantity is not equality of value. In such case, certainly partition among heirs in proportion to acreage would not be thought of. Nor, if the value of the tract equaled the owner's indebtedness, would such a division of it among creditors operate justly. In the present case, distribution on this basis of the portion of the fund held to represent the land in Adams county falls short by $230.97 of paying the Martin judgment, and leaves nothing for the Jacobs judgment, while it gives this money to the Houck and Weaver judgments,—both posterior in Adams county to the Martin and Jacobs judgments,—and to the Hafer judgment, entered only in York. Had the land in Adams alone been sold, the Martin and Jacobs judgments would unquestionably have been entitled to the proceeds as against the Houck, Weaver and Hafer judgments, and with its value as shown before the auditor would have been paid by the sale. By selling with it a tract in York, of inferior value, and making distribution in proportion to acreage, its proceeds are taken from them and given to two judgments posterior in lien and a third that was not a lien. Had the debtor owned no land in York, the two prior judgments would have been paid by a sale of the land in Adams. Ordinarily, the creditor's security is enhanced by an addition to the debtor's property, but under such a rule of distribution it may be impaired or destroyed.

Distribution on the basis of acreage, when the disparity of both quantities and values is great, may produce a result of still greater injustice. Given twenty acres in Adams with improvements making it worth $5,000, eighty acres in York worth but $1,000, and a judgment of $5,000 in each county, we have $6,000 to divide between the judgments at the ratio of one to four; giving the judgment in Adams but $1,200 while the judgment in York takes $4,800,—of which $3,800 is derived from the land in Adams on which it was not a lien. A later entry of the York judgment in Adams would make it also a lien there, but posterior to that of the Adams judgment. In their relation to the Martin and Jacobs judgments, this example represents, first, the

position of the Hafer judgment, and next the position of the Houck and Weaver judgments. The difference is only one of relative magnitude.

If such a rule is to prevail when the lands are in different counties, there is no good reason why it should not be observed, under analogous conditions, when they are in the same county. In such case, let the eighty acres, in the example given, be the portion first acquired by the debtor; the judgment that bound it would not be a lien on the twenty acres acquired later, or, if revived, would be a posterior lien. By a sale of both as one tract, and distribution on the basis of acreage, the same result would be reached.

The act of June 13, 1840, sec. 12, P. L. 689, provides that on a sheriff's sale of land in adjoining counties, subject to liens in both, the court " shall ascertain and determine, in such manner as they think proper, what proportion of the proceeds of such sale shall be applied in satisfaction of such previous liens." The act of February 17, 1876, sec. 1, P. L. 4, authorizing sales by assignees, gives no specific direction respecting the sale of a tract lying in two counties, but provides that " the proceeds shall be appropriated to liens according to their priority." No further rule for distribution has been given by the legislature. The Supreme Court, discussing the question in Gibble's Estate, 134 Pa. 366, say: " We lay down no general rule for distribution." Assuredly, it cannot have been within the legislative intent, or the view of the Supreme Court, that the security of a judgment should be impaired by the debtor's ownership of land not subject to its lien, that judgments should be paid from the proceeds of land on which they were not liens to the exclusion of those that were, nor that judgments should be postponed to others posterior in lien; results which appear in the present case in a distribution based on the arbitrary assumption, disproved by all the evidence, that the tract sold was of uniform value throughout, and that the land in each county was justly represented by a sum proportioned to its area.

It does not seem material that in the present case the land was bid for by the acre. The price per acre was apparently employed as a convenient unit of value, like the price per foot front in the sale of town lots. The bidders knew they were not bidding on a single acre, nor on such number of acres as they

might elect to take under their bids, but on all the land exposed to sale, to be taken and paid for in bulk at the rate bid per acre, be the quantity more or less. The area proved greater than was supposed, and the purchaser paid for the excess at the rate fixed by his bid. The assignee returned the sale as a sale in gross, for $6,557. All this proves nothing as to uniformity in value of the several portions included in the tract sold.

It should not be overlooked that the appellants had no control over the method of sale. They were forbidden by the order of court to employ execution process, which they could have controlled, an inquest on which might have given them the right to sell the land in Adams separately. They were denied this opportunity of appropriating that land to their liens, and it does not appear that they assented in any manner to the action of the assignee or the method of bidding which was adopted.

In its essence, the question is whether, with respect to land, contribution and distribution shall be made on the basis of value or of quantity. In some of its aspects, this question has been decisively or substantially settled. On a partial breach of warranty, compensation is based on the value of the land affected by the breach, as compared with the whole, and not on the relative quantity : Lea v. Dean, 3 Wh. 316 ; Beaupland v. McKeen, 28 Pa. 124. On a public sale by the owner, in the manner shown here, and a conveyance with general warranty, it will hardly be questioned that damages for a breach of warranty as to part of the land would be based on its relative value and not on its relative quantity. And "two purchasers at a sheriff's sale, subject to a mortgage which is a common incumbrance on the land of both, must pay the mortgage in proportion to the value of their respective lots : " Carpenter v. Koons, 20 Pa. 222 ; Fisher v. Clyde, 1 W. & S. 544. Had the two tracts in this case been sold separately, or the portions of tract No. 1 lying in different counties sold separately, subject to a common incumbrance, liability for its payment would be in proportion to the value and not to the area of the several parcels : Jones's Estate, 169 Pa. 392.

The only direct adjudication in this state on the aspect of the question presented here is in Oberholtzer's Appeals, 124 Pa. 583, and 134 Pa. 366. There the tract contained one hundred and eighty-four acres in Lebanon and thirty-two acres in Lancas-

ter county, the land in Lancaster being more valuable than the same quantity in Lebanon. About three fourths of the price was applied on a mortgage of the whole tract, and the residue on incumbrances in the two counties in proportion to the acreage in each. The Supreme Court (124 Pa. 583) said : " We see no error in this mode of division ; " but reversed the decree on other grounds. On a second appeal, the court, stating the reasons for affirming the distribution (134 Pa. 366) said: " Nearly $7,000 of the sum was applied to the mortgage, without any calculation of relative values, and it would be clearly inequitable to permit such a calculation now. . . . We lay down no general rule for distribution. We only say that a basis of valuation which has, by common consent, been adopted in the payment of common incumbrances, must, in fairness to all parties, be adhered to when the distribution of a balance of the fund comes to be made. The Lebanon land has been allowed to pay its share of the mortgage as if of equal value by the acre with that in Lancaster. It must draw its share of the surplus on the same pro rata basis."

In Jones's Estate, 169 Pa. 392, the question arose on a petition for the apportionment of a charge on land which had been sold by the sheriff in two parcels at different prices per acre. The court below directed contribution in proportion to values as shown by the sheriff's sale. This was affirmed, the Supreme Court saying : " As the rule announced, though somewhat obiter, in Carpenter v. Koons, has stood unchallenged for forty years, we do not think it well to depart from it, unless in exceptional cases like Gibble's Estate, where the acts of the parties have made a different rule necessary to an equitable result."

Under all the authorities, contribution and distribution in proportion to values would seem the normal rule, to be departed from only in exceptional cases, as where the parties have themselves so far departed from it that the departure must be continued to secure an equitable result. Aside from such cases, in holding that equality is equity the courts have uniformly had in view equality of values. Contribution on the basis of values adjusts the common burden in proportion to the means of bearing it. Distribution on the same basis gives to incumbrances the fund actually produced by the land on which they are respectively liens. In the present case, no reason appears for

departing from this rule; on the contrary, a departure is shown to be attended with results highly inequitable.

The decree of distribution is therefore reversed, and it is ordered that the record be remitted and distribution made in accordance with the auditor's first report.

RICE, P. J., and WILLARD, J., dissent from the opinion of the majority so far as the same reverses the action of the court below in distributing the proceeds of the sale of lot No. 1.

NOTE.—See appendix for comparative schedules of distribution.