### In re INDUSTRIAL COLD STORAGE & ICE CO.

(District Court, E. D. Pennsylvania. August 12, 1908.)

#### No. 1,983.

1. BANKRUPTCY—"TAXES" ENTITLED TO PRIORITY OF PAYMENT—WATER RENTS.
   Water rents due to a municipality, which are levied on property annually as a tax is levied and made a lien in like manner, are "taxes," within the meaning of Bankr. Act, July 1, 1898, c. 541, § 64a, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), which a trustee in bankruptcy is required to pay when levied against property of the estate in his possession.

   [Ed. Note.—For other definitions, see Words and Phrases, vol. 8, pp. 6867–6886, 7813.]

2. SAME—RENTS AND PROFITS OF MORTGAGED PROPERTY—RIGHTS OF MORTGAGEE.
   A mortgagee of realty in Pennsylvania, whose mortgage exceeds the value of the property, is equitably entitled to have the rents and profits of such property collected by a trustee in bankruptcy of the mortgagor, after payment of the taxes, applied to the payment of interest on his mortgage.

In Bankruptcy.   On certificate of referee.

Horace M. Rumsey, for trustees.

Hepburn, Carr & Krauss and Smithers & Lank, for bankrupt.

J. B. McPHERSON, District Judge. The facts upon which the present controversy arises are thus found by the learned referee, Joseph Mellors, Esq.:

"(1) In the month of February, 1904, the above-mentioned company became insolvent, and on the 4th day of March it made an assignment for the benefit of its creditors to the Central Trust & Savings Company.

"(2) On July 2d of the same year a petition in bankruptcy was filed against it in which the said assignment was set forth as an act of bankruptcy, and in August of the same year it was adjudicated a bankrupt.

"(3) On October 10, 1904, the said Central Trust & Savings Company, together with Joshua M. Gillespie and Howard M. Long, were elected trustees of said bankrupt estate.

"(4) At the time of the filing of said petition the assets of the bankrupt included, inter alia, real estate, consisting of a three-story brick house (occupied as a saloon) and lot situated at the northeast corner of American and Berks streets, in the city of Philadelphia, containing in front or breadth on American street 40 feet and extending 121 feet in depth. The bankrupt estate was also possessed of other real estate immediately adjoining the said real estate on the north and upon which was erected a partly completed cold storage plant.

"(5) At the time of the filing of the said petition in bankruptcy, the above-mentioned real estate was subject to a purchase money mortgage of $40,000 given by the bankrupt company to August Beitney, which was on record at the time of the filing of the petition.

"(6) Subsequent to the adjudication in bankruptcy—that is, on September 9, 1904—the said Augustus Beitney began suit upon said mortgage in the court of common pleas of Philadelphia county. The said Central Trust & Savings Company and Joshua M. Gillespie, who were receivers, were made partners to the suit, but they made no defense thereto, and judgment was duly recovered on October 11, 1904. A writ of levari facias was issued upon said judgment.

"(7) On the 5th day of November, 1904, the trustees in bankruptcy (who had also been receivers and let the suit go to judgment without defense) filed a petition in the United States District Court and secured a restraining order restraining the said mortgagee from further proceedings in the matter. Upon the 5th day of December, 1904, the court referred the matter to the referee, who reported against the restraining order, and the petition therefore was dismissed, and the property was sold under said mortgage on the first Monday of December, 1905, and bought in at sheriff's sale by the mortgagee for a nominal sum.

"The property upon which the mortgage was secured was appraised by the appraisers in bankruptcy at the sum of $10,000, which was brought to the attention of the trustees as well as the existence of the mortgage in question, and as well as other liens.

"(8) From the time of their election (October 10, 1904) to the time of the sale of said property (December, 1905), the trustees had possession of the premises and collected the rents thereof, but they did not pay the taxes, water rents, nor the interest upon said mortgage.

"(9) No proceedings were taken by the mortgagee to sequester the rents as by obtaining the appointment of a receiver before bankruptcy or by a direct application to the bankruptcy court."

Upon these facts the mortgagee, on whose behalf the property was bought in at the foreclosure sale, asked for an order directing the trustees to apply the rents received from the mortgaged property, first, to the payment of the taxes and water rent due to the city of

Philadelphia for the year 1905, and, second, to the payment of the interest that accrued upon the mortgage while the property was in the possession of the trustees. The referee made the order prayed for, and the appeal now before the court was taken by the trustees from his decision.

One of the exceptions filed by the trustees questions the referee's finding that the property was bid in at the sheriff's sale by the mortgagee, and avers that the purchaser was John P. Mathieu, that he bought subject to the taxes and water rent, and that he does not complain of the distribution of the rents in question among the general creditors. It is true that Mathieu was the nominal purchaser, and that the sheriff's deed was made to him; but I agree with the referee's finding that the mortgagee was the real party in interest, and that the title was taken and is held in his behalf. The dispute therefore is between the general creditors and the mortgagee himself, and is to be decided from that point of view.

With regard to the taxes and water rent due to the city of Philadelphia, there seems to be little difficulty. So far as the taxes are concerned, the command of section 64a (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]) is express:

"The court shall order the trustee to pay all taxes legally due and owing by the bankrupt," etc.

And the application of this provision to taxes accruing since the filing of the petition has been decided in several cases. Collier (6th Ed.) p. 529, note 22k; Swarts v. Hammer, 194 U. S. 441, 24 Sup. Ct. 695, 48 L. Ed. 1060. Whether the word "taxes" includes water rents due to a municipality is a question about which there is, perhaps, room for a difference of opinion. It was decided in Re Stalker (D. C.) 123 Fed. 961, that an assessment levied for a local improvement is a "tax" entitled to priority of payment under this section, while it was held by the same judge in Re Broom (D. C.) 123 Fed. 639, that a lessee's failure to pay water rents, in violation of a covenant in his lease, did not give the lessor or the municipality a claim to priority against the lessee's estate in bankruptcy. This ruling, however, is expressly put upon the ground that the lessee's obligation is contractual only, and therefore that the claim was not a "tax" against the bankrupt. In my opinion a water rent due to the city of Philadelphia is certainly within the spirit of section 64a. It is levied annually against the property as a tax is levied; it is made a lien by statute in like manner, and is enforced by the same remedies that are appropriate to the collection of a tax; and the amount due is similarly available for public purposes. The same reasons of policy that moved Congress to ordain priority for taxes justify the courts, I think, in giving the word a construction broad enough to include such other municipal claims as are practically indistinguishable in their nature and effect from taxes, strictly so called.

The equitable right of the mortgagee to have the balance of the rent applied to the unpaid interest upon his mortgage has been affirmed by some courts and denied by others. Under the facts found by the referee, I do not think that the right can be properly rested upon

the clause in the mortgage that conveyed the real estate to the mort-gagee "together with the * * * rents, issues and profits there-of." The effect of such a clause has been the subject of dispute, but for present purposes it is sufficient to refer to Savings Co. v. Shep-herd, 127 U. S. 502, 8 Sup. Ct. 1250, 32 L. Ed. 163, by which 1 re-gard the question as practically settled. That was a case in which a deed of trust (a mortgage by another name) expressly reserved to the mortgagor the right to take the rents of the real estate until de-fault, etc., and the decision is therefore not precisely in point; but in the discussion of the questions arising in the case the court used the following language, which applies so closely to such a situation as is now before me that I feel bound by what is there laid down as the general rule:

"It is, of course, competent for the parties to provide, in the mortgage, for the payment of rents and profits to the mortgagee, while the mortgagor re-mains in possession; but when the mortgage contains no such provision, and even where the income is expressly pledged as security for the mortgage debt, with the right in the mortgagee to take possession upon the failure of the mortgagor to perform the conditions of the mortgage, the general rule is that the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken, in his behalf, by a receiver (Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420, 28 L. Ed. 415; Grant v. Phœnix Life Ins. Co., 121 U. S. 105, 117, 7 Sup. Ct. 841, 30 L. Ed. 905), or until in proper form he demands and is refused possession (Dow v. Memphis Railroad Co., 124 U. S. 652, 654, 8 Sup. Ct. 673, 31 L. Ed. 565). See, also, Sage v. Memphis & Little Rock Railroad Co., 125 U. S. 361, 8 Sup. Ct. 887, 31 L. Ed. 694.

"The principles announced in these cases are decisive against the claim of the trust company to the rents of the property represented by the two drafts delivered by the United States to Wilson. Bradley's deed pledged the property, not the rents accruing therefrom, as security for the payment of his notes. It is true it provides generally, that the mortgagor may remain in possession and receive rents and profits, until there is default upon his part; but the only effect of that provision was to open the way to compel him to submit to a sale and thereby lose possession. The deed did not give the mortgagee or the trustees the right, immediately upon such default, to take possession and appropriate the rents of the property. It only gave the trustees authority, when such default occurred, to sell upon short notice, and, in that way, oust the mortgagor, and suspend his right to further appropriate the income of the property. Even if the deed had expressly pledged the income as security for the debts named, the mortgagor, according to the doctrines of the cases cited, would have been entitled to the income, until, at least, possession was demanded under the deed, or until his possession was disturbed by a sale un-der the deed of trust or, in advance of a sale, by having a receiver appointed for the benefit of the mortgagee."

But, without regard to the clause in the mortgage concerning the rents, it seems to me that the equitable right of the mortgagee to have the rents applied to the payment of the overdue interest should be sustained for the reason given by the Supreme Court of Pennsyl-vania in Wolf's Appeal, 106 Pa. 545, namely: That a lien creditor under conditions similar to those now presented is in equity the real owner of the land, and is therefore entitled to have its rents, issues, and profits applied to the discharge of his lien. In that case it was held by the lower court that, when a debtor had made an assignment for the benefit of creditors, the assignee in possession was bound to apply the rents arising from real estate that was incumbered beyond

its full value to the payment of interest upon the liens before even wage creditors could sucessfully claim to share in the fund thus arising. Upon this point, the opinion of the court below (which was affirmed by the Supreme Court) is as follows:

"In November, 1874, Light Bros., as individuals and as a firm, made an assignment for the benefit of creditors. They owned in Lebanon county a rolling mill, forge, some houses, and a farm, from the management and renting of which by the assignees after January, 1875, certain profits accrued which they applied to the payment of a judgment against the assignors entered in 1867 and to the payment of interest on two other judgments, one entered to April term, 1873, and the other to January term, 1874. * * * These transactions were set out in their second and final account * * * and certain wage creditors of the firm excepted, alleging that the rents and profits accruing from the use of the assigned property since the assignment had been improperly applied to the judgments referred to. * * *

"Whether the real estate in Lebanon county was partnership property or held in common, it seems clear in either case that the wage creditors, as against the liens mentioned, were not entitled to the rents and profits which accrued, as did all of them, after January, 1875. The recent case of Jones's Appeal, 102 Pa. 285, seems to be decisive upon this point. There the real estate of a firm was partnership property and was assigned for the benefit of creditors. A mill upon the land was burned and its machinery so injured by the fire as to be sold for old iron. A crop of grass also was grown upon the land after the assignment, and the wage creditors claimed the proceeds of both crop and machinery. They were, however, awarded to lien creditors, and the Supreme Court expressly approves this part of the decree, although the opinion is mainly concerned about other questions. The principle of this decision seems to us to cover the case of rents. If the machinery which in that case helped to give value to the land, and the grass which grew upon it after the claims for wages had accrued, partook of its character to such an extent as, equitably at least, to belong to the lien creditors after severance, it would seem plain that the rents and farm profits here, which the land produced and which wholly accrued after these claims for wages had become due, ought to follow a similar course. The income or product of an assigned estate is held by the assignee in trust for all the creditors of the assignor according to their legal and equitable rights (Bausman's Appeal, 90 Pa. 180); and as all the judgments referred to were entered more than six months before the assignment was made, and therefore before the labor was performed, it is hard to see why the substantial owners of the property have not at least an equitable right to the whole of what it produces. Burkholder's Appeal, 94 Pa. 524, regards the lien creditors of an assignor in the same light, viz., as substantial owners of his real estate, and divides among them the interest on deferred payments, even after the land has been sold by order of court."

From this ruling a wage creditor took an appeal, but the Supreme Court affirmed the decree of the court below, saying:

"The appellant sought to object to the account on the alleged ground that he was a preferred creditor of the assignor. The court found that his claim was not sustained, that he had no interest in the account to which he excepted, and therefore no standing to file exceptions. In case of a sale of the land it is very clear his claim could not be allowed to the prejudice of a prior lien creditor. We think the mere rents of the land in the hands of assignees, not being the product of business managed and carried on by them, but solely the product of the land itself, should be applied on those prior liens which would be entitled to the proceeds of the lands, if sold. This we understand to be the ground on which the court ruled the case. The conclusion is sustained for reasons expressed in Bausman's Appeal, 90 Pa. 180, and Burkholder's Appeal, 94 Pa. 524."

See, also, Gibble's Estate, 134 Pa. 366, 19 Atl. 681.

These decisions are entitled to much weight in a controversy before a federal court concerning the effect of a Pennsylvania mortgage; but, aside from their weight, it seems to me that the equity of the situation is with the mortgagee. Any other ruling would permit an assignee or a trustee to take possession of the debtor's real estate —this being inadequate to pay the liens against it—and deliberately divert the rents issuing out of the land from the creditor who has a lien upon it, and has therefore in equity the first claim upon what it produces, and apply them to the profit of general creditors who have no such lien, and whose claims, indeed, may have come into existence with full knowledge, actual or constructive, that the debtor's land was incumbered beyond its value. For many purposes the relative rights of creditors are to be regarded as fixed when the act of bankruptcy takes place, or the petition is filed. In this aspect, the mortgage creditor now before the court was the equitable owner of the bankrupt's real estate in August, 1904, and the trustees were bound to administer the property in subordination to his rights. What they ask to do, however, is to take the rents of what was really his property, and divide them among the other creditors. This, I think, cannot be done.

The order of the learned referee is affirmed.