In re TORCHIA.

(District Court, W. D. Pennsylvania. February 1, 1911.)

No. 4,518, in Bankruptcy.

1. BANKRUPTCY (§ 319*)—CLAIMS—MORTGAGE FORECLOSURE—ATTORNEY'S COMMISSIONS.

　　Where mortgage foreclosure proceedings were instituted against a bankrupt, and his trustee was served with a scire facias and had an opportunity to defend against the amount claimed, an allowance to the mortgagee for attorney's fees included in the judgments finally entered constituted a part of the debts allowable in the bankruptcy proceedings.

　　[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 319.*]

2. BANKRUPTCY (§ 363*)—CLAIMS—PAYMENT—OBJECTIONS—TIME.

　　Where no objection was made by any creditor to the payment of certain attorney's fees to judgment claimants included in judgments confessed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the bankrupt, and paid under former orders of distribution, creditors could not thereafter object to such payments in proceedings for further distribution.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 363.*]

3. BANKRUPTCY (§ 364*)—CLAIMS—PAYMENT—LIENS.

Where payment of an alleged specific lien was made by a bankrupt's trustee after notice to all creditors and without objection, a general judgment creditor claiming a prior lien could not thereafter object under the rule that lien creditors who are not prompt and persistent in asserting rights may lose them.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 364.*]

4. MUNICIPAL CORPORATIONS (§ 398*)—STREETS—CHANGE OF GRADE—RIGHTS TO DAMAGES—NATURE OF CLAIM.

A right to recover damages for change in a street grade is a personal claim and does not pass with a subsequent sale of the land.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 953–957; Dec. Dig. § 398.*]

5. BANKRUPTCY (§ 140*)—LIENS—MORTGAGES—DAMAGES.

Where mortgaged property of a bankrupt was injured but not taken as a result of a change in a street grade, the mortgagee out of possession was not entitled to the damages recovered from the city by the bankrupt as against general creditors; the possession of the trustee not being that of the mortgagee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

6. BANKRUPTCY (§ 140*)—CLAIMS—ASSETS OF ESTATE—RENTS.

Rents arising from divers mortgaged property belonging to a bankrupt, and damages recovered for injuries to the property by changes in street grades, constituted a part of the bankrupt's general estate, especially in view of the negligence of creditors to take any steps for marshaling of assets.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

7. BANKRUPTCY (§ 258*)—SALE OF REAL ESTATE—LIENS—JURISDICTION.

A bankruptcy court has power to sell real estate discharged of liens after notice to lien creditors to determine the amount of the lien claimed and direct payment thereof out of the funds arising from the sale.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 258.*]

8. BANKRUPTCY (§ 267*)—ADMINISTRATION OF ESTATE—SALE OF REAL ESTATE —LIENS—FEES.

Where real estate of a bankrupt subject to mortgages and also to judgment and mechanics' liens was ordered sold free from liens, the funds realized from the sale were liable for referee's and trustee's commissions and for counsel fees prior to the payment of mechanics' and judgment liens, under the rule that expenses of creating a fund are to be paid out of it under Bankruptcy Act July 1, 1898, c. 541, § 48a, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3439), as amended by Act June 25, 1910, c. 412, § 9, 36 Stat. 840, providing that trustees shall receive commissions on all moneys disbursed or turned over to any person including lienholders.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 267.*]

9. MORTGAGES (§ 151*)—NATURE OF LIEN—PRIORITY.

Under Act Pa. April 6, 1830 (P. L. 293) §§ 1, 2, providing that first mortgages shall not be affected on writs of vend. ex. or lev. fa., a first mortgage on real estate in Pennsylvania is a lien of a higher class than judgments or liens other than taxes.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig §§ 307–336; Dec. Dig. § 151;* Judgment, Cent. Dig. § 1371; Mechanics' Liens, Cent. Dig. §§ 358–370.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
185 F.—37

10. BANKRUPTCY (§ 339*)—CLAIMS—JUDGMENTS—ATTORNEY'S FEES.
    Where judgments were entered against a bankrupt by confession without suit and included an allowance for attorney's fees, the bankrupt was entitled at the first opportunity, when such judgments were presented for allowance as claims against his estate, to object to the allowance of the attorney's fees because no testimony was offered as to the value of the services or the amount of the commissions which should be allowed, and hence his trustee in bankruptcy was entitled to raise the same objection.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 339.*]

11. BANKRUPTCY (§ 324*)—CLAIMS—PAYMENT—INTEREST.
    Where mortgaged real estate belonging to a bankrupt and subject also to mechanics' and judgment liens was sold, free from liens, which were transferred to the proceeds, interest was payable on the mortgage debt to the date of the payment of the principal, but not so as to the mechanics' and judgment liens, since they could be and were discharged by the sale and were payable only when the fund was distributable pursuant to a decree of distribution.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 324.*]

In the matter of bankruptcy proceedings of Frank Torchia. On questions certified by referee.

James L. Wehn and Charles A. Woods, for trustee.
Wm. Kaufman, for mechanics' lien creditors.
Albert York Smith, James T. Buchanan, John E. McCalmont, and Thomas H. Hasson, for excepting creditors.

ORR, District Judge: The referee has certified to this court 12 questions in pursuance of petitions for review and exceptions filed by various parties interested in the distribution of the funds in the hands of the trustee. To consider them in the same order as presented by him is proper. This we do for convenience, although some are correlated with and dependent upon others, and the first are not by any means the important questions.

The assets consisted chiefly of 11 separate parcels of real estate which were sold from time to time by the trustee in pursuance of an order directing sale of the lands discharged of liens. Each creditor had notice of the application for such order, and none objected except Raymond M. Kaufman as the holder of the mortgages hereinafter mentioned. Each separate parcel was subject to one or more liens. From time to time accounts of sales as they occurred were filed with the referee, who, after notice to all creditors of such accounts, directed distribution to be made to lien creditors. With knowledge of such accounts and of such orders of distribution, all creditors permitted the payments to be made by the trustee without objection. It was reasonably to be expected that many questions with respect to the marshaling of assets would arise because there were mortgages on some parcels, intervening and subsequent judgments covering all, and mechanics' liens upon one. However, no such question appears to have been raised until the present account (being the fourth) was filed by the trustee. The proceeds of the sale of real estate aggregate $241,440. In addition, the trustee received from rents and other sources $12,516.60.

Included in the balance, as shown by the account before us, is the sum realized from the sale of what is known as the Hotel property, $85,000. Against that property were the liens of two mortgages held by Raymond M. Kaufman, which had priority; next mechanics' liens; and then various judgment liens, which latter were not originally limited to the Hotel property. The amount realized from that property is more than enough to pay the mortgages and mechanics' liens. There is not sufficient in the hands of the trustee to pay all the subsequent judgment liens. For this reason, while allowing the necessary expenses of making the sales and other necessary expenses, which were of course great, the referee denied to the trustee its commissions and counsel fees and as well refused to take any commissions himself. In any aspect of the case there is nothing to distribute to general creditors.

First question: "Whether the trustee was entitled to the items of credit claimed in trustee's account for trustee's commissions and counsel fees, and certain other items of credit claimed in said account to which exceptions were filed by certain creditors."

This question is answered in the affirmative with the qualification that the referee's opinion as to the reasonableness of the amounts of the several credits be and is hereby affirmed upon his opinion in regard thereto. The grounds for this answer are to be found in the answers to questions following.

Second question: "Whether Raymond M. Kaufman is entitled to the attorney's commissions claimed of 5 per cent. on certain mortgages upon which judgments had been recovered in the court of common pleas of Allegheny county."

In view of the fact that the proceedings were adverse to the trustee and that he was served with a writ of scire facias and had an opportunity to defend against the amount claimed, and inasmuch as no question was raised in said proceedings with respect to the attorney's commissions, which were included in the judgments finally entered, the court is of opinion that Raymond M. Kaufman is entitled to the attorney's commissions included in said debts, and the second question is therefore answered in the affirmative.

Third question: "As to whether certain attorney's fees paid out under former orders of distribution to judgment claimants in which said attorney's fees were confessed should be allowed."

No objection was made by any of the creditors to the payment of such amounts at the times they were made, to the orders of the referee directing such payments. It is too late for the creditors to raise the question now. The referee is sustained, and the question answered in the affirmative.

Fourth question: "Whether the claim of credit for the payment of a specific lien of the mortgage in favor of the Anchor Savings Bank in priority to a general judgment creditor whose lien was prior to said specific mortgage was lawful; it appearing, however, that the judgment creditor thus postponed to the said Anchor Savings Bank lien was subsequently paid in full, and did not object to said payment to the Anchor Savings Bank."

This payment, having been made after notice to all creditors and without objection by any, should not now be disturbed. Lien creditors who are not "prompt and persistent in asserting rights" may lose them. Keyser v. Wessel, 12 Am. Bankr. Rep. 126, 128 Fed. 281, 62 C. C. A. 650. The referee was right in his conclusion, and the question is answered in the affirmative.

Fifth question: "Whether the claim of John D. Brown, Esq., for $500 as counsel fees, as attorney for the bankrupt, is entitled to be paid out of the fund in the hands of the trustee in priority to lien creditors."

There is no question as to the reasonableness of the credit claimed. Payment was refused because the referee thought the payment would affect vested liens. This question is answered in the affirmative for reasons given in the consideration of subsequent questions.

Sixth question: "Whether the rents collected by the receiver and trustee from the respective properties of the bankrupt, amounting to ·about the sum of $5,300, have been lawfully distributed to the creditors in the order of distr'' ution already made, and whether the sum of $6,300 paid by the city of Pittsburgh to the trustee, for damages arising from the change of grade on Webster avenue, has been legally distributed to the creditors in the order of distribution heretofore made, or whether said sums are to be held as part of the general estate of the bankrupt free of all liens."

It is a rule of law that a mortgagee out of possession is not entitled to rents. An emphatic pronouncement of this principle, with references to ancient and modern authorities, may be found in Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420, 28 L. Ed. 415. Many of the cases cited state the principle in various ways, but all to the one end, that a mortgagor of real estate is not liable for rent while in possession. He contracts to pay interest, not rent. And, further, that a mortgagee must recover the possession by regular entry by suit before he is entitled to the rents and profits. But the learned referee relied on certain Pennsylvania cases which appear to hold that upon a deed of voluntary assignment for the benefit of creditors made by the mortgagor the rents received by the assignee from each particular piece of real estate which passed to him by the deed of voluntary assignment should be applied equitably in reduction of the mortgage or other liens thereon. What they do hold is that priorities shall not be allowed out of assets nonexistent at the time of the assignment. The principal case relied on is Wolf's Appeal, 106 Pa. 545. It was followed by the United States District Court for the Eastern District of Pennsylvania in Re Industrial Cold Storage & Ice Co. (D. C.) 20 Am. Bankr. Rep. 904, 163 Fed. 390. It seems to me that the only theory upon which such decision can rest is that the mortgagee is either in possession through his trustee, to wit, the assignee, under the deed of voluntary assignment, or entitled to such possession by the voluntary act of the assignor. Under the Bankrupt Act of 1898, § 70 (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]), the trustee is vested with the title of the bankrupt mortgagor by act of law and not by the act of the bankrupt. The mortgagee is no nearer to the

possession of the mortgaged premises after the election of the trustee than he was before. He could not have higher rights against the trustee than he had against the bankrupt. If the trustee be required to pay the rents to the mortgagee, the mortgagee to that extent has higher rights than he had before the proceedings were started. If the bankrupt be not required to pay the rents and profits to the mortgagee prior to possession by the mortgagee, the trustee certainly ought not to be required to do so.

Now with respect to the damages arising from the change of grade: It appears that the damages arose by a change of grade, and not by reason of the appropriation of any part of the mortgaged premises. The law seems clear in Pennsylvania that where, in pursuance of the right of eminent domain, property is injured, but not taken, the right of action for such injury is in the owner of the freehold, and a mortgagee out of possession is not in a position to maintain such action. Knoll v. Railway Company, 121 Pa. 467, 15 Atl. 571, 1 L. R. A. 366. A right of damages for a change of grade is a personal claim and does not pass with the subsequent sale of the lands. Campbell v. City of Philadelphia, 108 Pa. 300. It is true that, where the mortgaged premises may be so injured as to make the security to the mortgagee precarious, the court may direct that the damages be paid into court for the protection of the parties interested in the land; but such is not the case where it appears that the property bound by the liens is sufficient for their payment. Philadelphia & Reading Railway Co. v. Pennsylvania Schuylkill Valley Ry. Co., 151 Pa. 569, 25 Atl. 177. In the case at bar it appears that the property affected by the change of grade was sufficient to satisfy the lien of the mortgagee. In such case, under the Pennsylvania rule, had the damages been paid to the bankrupt, the mortgagee could not have required him to pay them on account of the mortgage. Why should the mortgagee's right be higher against the trustee than they were against the bankrupt? Lien creditors are not intended to be benefited by bankruptcy proceedings. The law simply provides that their liens, if valid, shall not be affected. In consequence of the change of grade of the street, the bankrupt entered into a contract for the remodeling or rebuilding of a hotel situate on the property and fronting upon the graded street. By reason of such contract, statutory mechanics' liens were entered by the architect and various contractors and subcontractors for work done upon the building. They certainly could have no right to have the money realized upon the personal claim of the bankrupt against the city of Pittsburgh applied in relief of their liens.

The rents arising as they did from divers properties, and the damages, were part of the general estate, especially in view of the neglect of creditors to seek a marshaling of assets.

Seventh question: "Whether the funds realized from the sale of the various parcels of real estate, after the payment of taxes, mortgages and interest, is not liable for the referee's and trustee's commissions and counsel fees, prior to the payment of mechanics' and judgment liens; no objection having been made to the sale of these various properties by any mechanic or judgment lienors."

The referee was of the opinion that because the bankrupt act pro-

vided that valid liens should not be affected, and because, as he found, there was no money in the hands of the trustee for distribution except the proceeds of the real estate, and because the liens thereon exceeded in amount the proceeds available thereto, therefore nothing could be applied to such commissions and counsel fees. Under the circumstances of this case I think the referee was in error.

It is undoubted now that a court of bankruptcy has power to sell real estate discharged of liens after notice to lien creditors. From the earliest times a court of equity has assumed jurisdiction of the ascertainment of liens and of their enforcement by sale or otherwise, and of the distribution of the proceeds of sale among the lienors. It is proper, in a case like the present, that the rights of those claiming to have a lien should be ascertained by the bankrupt court. If referee's and trustee's fees are not to be paid out of the fund realized by the sale of real estate discharged of liens, there will be no incentive to the small creditor of himself to institute proceedings to determine the validity of liens. In this case, had the mechanics' liens, which are purely statutory, been determined to have been void, a large fund would have been applicable to the claims of the general creditors. They raised no question about the sale discharged of liens. They were benefited thereby. They were at no expense, as they would have been had they been permitted to enforce their liens themselves, and they ought in equity and good conscience be willing that the referee's and trustee's commissions and expenses should be allowed and paid out of the fund.

Apart from that, however, it is the undoubted rule that the expenses of creating a fund should be paid out of it. The expenses in such case should include also reasonable compensation to the parties who have been instrumental in creating the fund.

While liens cannot be affected by the bankrupt act, they are not thereby given a higher status than they had before the act was passed. In Pennsylvania, under the laws regulating assignments for the benefit of creditors, by Act of February 17, 1876 (P. L. 4), a public sale, and by Act May 24, 1893 (P. L. 128), a private sale, of real estate might be ordered free and discharged of all liens except the liens of mortgages. Also a public sale with like effect might be ordered by virtue of section 19 of insolvency act of 1901 (P. L. 415). In that state also the orphans' court may order a sale of a decedent's real estate, unless for payment of debts, with the same result, but with the same limitation. When such a sale under either of the statutory powers thus mentioned has been had, it has never been doubted that the commissions of the assignee, or administrator, as the case may be, and his counsel fees are payable out of the fund before distribution to judgment or mechanics' liens.

That first mortgages on real estate in Pennsylvania are liens of a higher class than judgments and other liens, except taxes, is observed by reference to Act of April 6, 1830 (P. L. 293) §§ 1, 2, which provide that they shall not be affected in any way by any sale upon writs of vend. ex. or lev. fa. For that reason the decision in Clark Coal & Coke Company, 22 Am. Bankr. Rep. 843, should not be questioned so far as it refused allowance of expenses of running a business and

expenses of administration to the prejudice of a mortgage creditor. In support of this position that mortgages are of a higher class and more carefully protected than judgments, many cases could be cited.

In view of the decision arrived at with respect to rents and damages, the decision of this seventh question may be immaterial, because the fund in the hands of the trustee clearly applicable to commissions and counsel fees is increased by the rents and damages. If the bankrupt act of 1898 be not clear in its provisions with respect to compensation to trustees where the assets to be administered have been derived from the sale of property subject to liens, it has been made specially so by the amendment of June 25, 1910 (chapter 412, 36 Stat. 840), which provides, in section 9, that trustees shall receive "commissions on all moneys disbursed or turned over to any person including lienholders." I cannot escape the conclusion that the provision last quoted is declaratory of the law as it was. The referee was in error in his opinion upon the seventh question. It is answered in the affirmative.

Eighth question: "Whether or not any attorney's commissions should be allowed on the various mortgages or judgment notes appearing on the list of liens presented for payment at the present audit."

This presents a different question from the second because the trustee was not made a party to the proceedings leading to the entry of the judgments on the notes. They were judgments d. s. b. secured sine breve. The referee based his conclusion that such attorney's commissions should be allowed upon Zug v. Scaright, 150 Pa. 506, 24 Atl. 746. That case, however, holds only that a subsequent judgment creditor has no standing upon the distribution of the proceeds of a sheriff's sale paid into court to contest the amount of attorney's commissions included in a prior judgment in the absence of fraud or collusion. It does not hold that the defendant could not make such contest. On the contrary, the opinion of the lower court, which was sustained by the court above, expressly states the right of the defendant to raise such question. The objection raised before the referee to the attorney's commission on said judgments was made by the trustee and not by subsequent judgment creditors. The trustee stands in the shoes of the bankrupt. He could contest the right to the attorney's commissions had he been made a party to the proceedings in the court in which the judgments were entered. He raised the objection before the referee upon distribution at the first opportunity, and his objection should have been sustained. In this we follow the case of McCabe v. Patton (Circuit Court of Appeals for the Third Circuit) 23 Am. Bankr. Rep. 335, 174 Fed. 217, 98 C. C. A. 225. It does not appear that any testimony was offered as to the value of the services, or the amount of the commissions which should be allowed with respect to the several judgments. In the absence of evidence, under objection, the claims to the attorney's commissions should be disallowed. The eighth question is therefore answered in the negative.

Ninth question: "Whether or not interest should be allowed on the various liens to the respective dates of sales, confirmations of sales, or to October 1, 1910."

The referee has assumed that October 1, 1910, would be the date when the payments would be made; but such date appears to have been arbitrarily selected and is not material to the ninth question.

Interest is payable on the Kaufman mortgage to the date of payment of principal because the mortgage could not have been discharged by virtue of any of the Pennsylvania statutes above referred to. Interest is not payable upon the mechanics' liens or judgments to the date of payment of their principal sums, because they may be discharged by a judicial sale. Having been transferred from the land to the fund realized by sale, they must be payable when and only when the fund is distributable; that is, when the referee under the bankruptcy act first prepares a decree or order for distribution. In the present case, at all events, there are no equities arising from promptness or diligence of any lien creditors except the mortgagee, which entitles them to have interest run after, or cease to run before, the date of the decree of distribution which has resulted in the present certified questions.

Tenth question: "Whether or not there should be allowed $7,500 to J. L. Wehn, Esq., as counsel for the trustee."

The present claim appears to have been the result of a second thought, as the claim originally was for $2,500. The referee was of the opinion that the larger sum was too great, and that the smaller sum would be right, but refused to allow the smaller sum because of his opinion that it would affect valid liens contrary to the express provisions of the bankruptcy act. The claim of $2,500 is deemed to be the proper amount for the reasons expressed by the referee in his first report upon the exceptions filed before him and should be allowed for the reasons stated above in the answer of the court to the seventh question.

Eleventh question: "Whether or not there should be allowed receiver's compensation in the sum of $500 and counsel fees as counsel for the receiver in the sum of $500."

The amounts do not seem excessive and were not deemed so by the referee, but were refused because of his opinion that their allowance would affect vested liens. The court is of opinion that they should be allowed for the reasons stated in answer to the seventh certified question.

Twelfth question: "Whether the referee's and trustee's commissions as allowed by law and counsel fees for the trustee should not, in any event, be allowed out of the funds before the court for distribution."

This question is the same as the seventh, but in a different form. It is answered in the affirmative.

In view of the foregoing, the balance in the hands of the trustee should be distributed, first to taxes which are a first lien, then to the Raymond M. Kaufman mortgage (of which a large portion has already been paid), then to the mechanics' liens upon the Hotel property, then to expenses including commissions and counsel fees, and then to the judgment creditors in the order of their priority of lien.