**UNITED STATES of America, Appellant,**

v.

**OSWALD AND HESS COMPANY.**

**UNITED STATES of America**

v.

**OSWALD AND HESS COMPANY, City of Pittsburgh, Appellant.**

**Nos. 15106, 15107.**

United States Court of Appeals Third Circuit.

Argued April 22, 1965.

Decided May 26, 1965.

Morton Hollander, Chief, Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Gustave Diamond, U. S. Atty., Sherman L. Cohn, John C. Eldridge, Attys., Dept. of Justice, Washington, D. C., on the brief), for the United States.

Thomas S. White, Asst. City Sol., Pittsburgh, Pa. (David W. Craig, City Sol., Pittsburgh, Pa., on the brief), for City of Pittsburgh.

Before McLAUGHLIN, STALEY and SMITH, Circuit Judges.

STALEY, Circuit Judge.

The United States brought this action to obtain discharge of all claims and liens on property it had bought at a foreclosure sale upon a mortgage which it held. The City of Pittsburgh filed an answer to the petition, claiming a prior

lien on the property for certain water and sewage charges owed by Oswald & Hess Company, the mortgagor. The district court granted relief to the City for charges for which bills had been issued up to the time the mortgage in question was recorded. Both the United States and the City have appealed. As we are convinced that our recent decision in In re Lehigh Valley Mills, 341 F.2d 398 (C. A.3, 1965), requires a different result, we must reverse.[1]

The facts can be briefly stated. In January, 1961, the district court approved a Plan of Arrangement under Chapter XI of the Bankruptcy Act for Oswald & Hess Company. The Plan contemplated that the company would borrow $350,000 from the Small Business Administration, the obligation to be secured by a first mortgage on Oswald & Hess's property. The loan was made, and the mortgage was recorded on April 11, 1962. Four and one-half months later, the Plan of Arrangement was vacated and Oswald & Hess was declared bankrupt upon its voluntary petition.

When the company defaulted in its mortgage payments, the United States obtained a $350,000 judgment against it. A writ of execution issued pursuant to this judgment and foreclosure on the property subject to the mortgage followed. The United States bought the property for $175,000. This action was then instituted. The City's answer claimed $37,992.09 of which $26,252.85 was for bills issued before the mortgage was recorded.

■ At the outset, the City contends that priorities between the liens of the federal government and those of the City must be determined according to state law. The theory is that as the lien of the federal government is based upon a state-regulated mortgage transaction, state law must govern the priority of liens arising from that transaction. It does not seem to us to be necessary to deal with the esoteric questions raised

by this position, e. g., whether the federal lien "arises" by virtue of the federal court judgment and is thus a creature of federal law or whether it can be more properly said to "arise" from the mortgage, allegedly a creature of state law. Over the years, the Supreme Court and this court have consistently held that federal law is determinative where the question involved is the priority to be accorded to a lien of the federal government whatever its source. United States v. Security Trust & Savings Bank, 340 U.S. 47, 49, 71 S.Ct. 111, 95 L.Ed. 53 (1950); United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1945); Ersa, Inc. v. Dudley, 234 F.2d 178, 180 (C.A.3, 1956); United States v. Ringwood Iron Mines, Inc., 251 F.2d 145 (C.A.3, 1958). The contentions made by the City here are essentially the same as those made by the State in Lehigh Valley Mills, 341 F. 2d 398 (C.A.3, 1965). That case involved operative facts identical to those present here. The lien there arose by virtue of a judgment obtained in federal court; the security interest on which the judgment was based was recorded according to the Pennsylvania Uniform Commercial Code, 12 A.P.S. § 1–101 et seq. As the cases above-cited required, we there resolved the matter according to federal law.

The United States urges that under Federal law it is entitled to priority by virtue of (1) R.S. § 3466, 31 U.S.C. § 191, which provides that in distributing the assets of an insolvent the debts due the United States will be first satisfied; (2) the general Federal common law principle that liens which are first in time and choate are entitled to priority over subsequent liens.

■ As in Lehigh Valley Mills, supra at 401, we find it unnecessary to consider the Government's contention with respect to R.S. § 3466. The governing Fed-

---

1. Our opinion in In re Lehigh Valley Mills, 341 F.2d 398 (C.A. 3, 1965), was   not available to the learned district judge when the instant decision was rendered.

eral common law principle was set out in Lehigh Valley Mills, supra at 401:

" * * * [A] lien competing with one of the Federal Government must be choate–i. e., the identity of the lienor, of the property bound by the lien, and of the amount of the lien all must be certain. United States v. City of New Britain [347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520] * * * The last requirement, of course, is only met if there is no further opportunity for judicially contesting the amount of the lien. Thus, the lienor must either have obtained judgment on the lien or it must be enforceable against the property by summary proceeding. United States v. Acri, 348 U.S. 211, [75 S.Ct. 239, 99 L.Ed. 264] (1955); United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, [75 S.Ct. 247, 99 L.Ed. 268] (1955); United States v. Security Trust and Savings Bank, 340 U.S. 47, [71 S.Ct. 111, 95 L.Ed. 53] (1950)."

Under this standard, the City's liens were clearly inchoate. The only action which had been taken by City officials was to issue bills. No action was taken to enforce the charges. The Pennsylvania procedure in these circumstances requires the appropriate agency to file the bills in the Court of Common Pleas. 53 Purdon's Pa.Stat.Ann. § 7143. It is after filing that the state procedural devices for challenging and contesting the amount of the bills come into play. 53 Purdon's Pa.Stat.Ann. §§ 7182, 7183, 7184, 7185. It is thus clear that there was "further opportunity for judicially contesting the amount of the lien."

■ Finally, the City argues that its charges have been specifically granted priority by a provision of the Small Business Act, 15 U.S.C. § 646, which provides:

"Any interest held by the Administration in property, as security for a loan, shall be subordinate to any lien on such property for taxes due on the property to a State, or political subdivision thereof, in any case where such lien would, under applicable State law, be superior to such interest if such interest were held by any party other than the United States."

The statute clearly requires that the liens of the political subdivision be for "taxes due on the property." Whether the charges here are in fact "taxes" we need not decide, for it is clear that they were not "due on the property." The statute contemplates taxes on "specific or particular property," Lehigh Valley Mills, 341 F.2d at 400–401, as opposed to charges for services rendered to the occupants.

Accordingly, the United States has priority of interest in the property over all water and sewage charges. The cause at No. 15106 will be reversed; that at No. 15107 will be affirmed.