**In re Harry C. ADAMS and Catherine Anna Adams.**

**Civ. A. No. 83–6192.**

United States District Court, E.D. Pennsylvania.

May 23, 1984.

Andrew N. Schwartz, Philadelphia, Pa., for debtors.

Eric L. Frank and Alan M. White, Community Legal Services, Inc., Philadelphia, Pa., for Consumers Educ. and Protective Ass'n as amicus curiae.

Edward Sparkman, Asst. City Sol., Philadelphia City Solicitor's Office, Philadelphia, Pa., for the City of Philadelphia.

## MEMORANDUM

GILES, District Judge.

This bankruptcy appeal presents the question of whether debts owed to the City of Philadelphia for water and sewer rents are "property taxes" entitled to priority status under 11 U.S.C. § 507(a)(6)(B) (1982). The Bankruptcy Court answered in the affirmative. *See In re Adams*, 17 B.R. 742 (Bkrtcy.E.D.Pa.1982), *reaff'd on reconsideration*, 34 B.R. 352 (Bkrtcy.E.D.Pa.1983). Because I conclude that water and sewer rents are not "property taxes," the decision below shall be reversed.

## I. BACKGROUND

The facts underlying this appeal are not in dispute. The debtors, Harry and Catherine Adams, filed a Chapter 13 petition on March 25, 1981. In July, the City of Philadelphia filed a proof of priority claim in the amount of $1,215.32. The debtors objected to that portion of the claim representing unpaid water and sewer rents, some $220.82.

In its initial opinion, the bankruptcy court relied upon both state and federal law in determining that water and sewer rents were in the nature of property taxes. The federal analysis was limited to citation of one rather ancient case from this district, *In re Industrial Cold Storage & Ice Co.*, 163 F. 390 (E.D.Pa.1908). Looking at state law, that court was persuaded by the Pennsylvania statutory provisions allowing a municipality to obtain a lien against the property in the amount of the outstanding rents. *See In re Adams*, 17 B.R. at 743. Although a motion for reconsideration was formally denied, a second opinion issued, which was slightly different in focus. Faced with Pennsylvania caselaw which ostensibly contradicted the earlier ruling, the court determined that federal law was controlling and relied only upon that prong of the earlier analysis. *See In re Adams*, 34 B.R. at 353–54. This appeal followed. The Consumer Education and Protective Association ("CEPA"), an organization of low income consumers, has moved for leave to file a brief as *amicus curiae* on behalf of the debtors. This motion shall be granted.

## II. DISCUSSION

■ Section 507(a)(6)(B) of the Bankruptcy Code accords priority status to claims for "property taxes" held by governmental units.[1] A threshold question, which apparently created some confusion below, is whether federal or state law governs. As the United States Supreme Court has noted; "the bankruptcy act is a federal statute, the ultimate interpretation of which is in the federal courts." *New Jersey v. Anderson*, 203 U.S. 483, 491, 27 S.Ct. 137, 140, 51 L.Ed. 284 (1906). *Accord New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941); *In re Lorber Ind. of Cal., Inc.*, 675 F.2d 1062, 1066 (9th Cir.1982). The *Anderson* court noted that

---

1. The section gives these claims sixth place in line, stating:

   (6) Sixth, allowed unsecured claims of governmental units to the extent that such claims are for—

   \*     \*     \*     \*     \*     \*

   (B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition.

11 U.S.C. § 507(a)(6)(B) (1982). As the court below recognized, this is narrower than its predecessor, section 64(a)(4) of the former Act, which accorded priority to *any* government tax. However, cases decided under the previous Code will still be relevant to the inquiry into what constitutes a tax.

although a state's determination of whether something is a tax is persuasive and entitled to great weight, it is not binding. *Anderson*, 203 U.S. at 491, 27 S.Ct. at 140. The confusion sets in because it may become crucial to determine how a state treats a debt and why that debt is incurred. The *Feiring* Court endeavored to explain this interface between federal and state law:

> The particular demand for which the City now claims priority of payment as a tax is created and defined by state enactment. We turn to its provisions and to the decisions of the state courts in interpreting them, *not to learn whether they have denominated the obligation a "tax" but to ascertain whether its incidents are such as to constitute a tax within the meaning of [the Bankruptcy Act.]*

*Feiring*, 313 U.S. at 285, 61 S.Ct. at 1029 (emphasis added). Put another way, federal law defines a "tax," but state law must be referenced in order to apply that definition. The court in *Feiring* went on to look to the New York City sales tax ordinance to determine whether it was a "tax" within the meaning of the federal bankruptcy act. Indeed, most federal courts, at some point in their analysis, refer to the state law creating the charge or debt. *See e.g., Anderson*, 203 U.S. at 492–94, 27 S.Ct. at 140–41 (New Jersey corporate tax); *Lorber*, 675 F.2d at 1066–68 (California sewer user fees); *McDowell v. City of Barberton, Ohio*, 38 F.2d 786, 787–88 (6th Cir.1930) (Ohio water charges); *In re New England Carpet Co., Inc.*, 26 B.R. 934, 936–37 (Bkrtcy.D.Vt.1983) (Vermont water rents and penalties). As a practical matter, it would be incongruous to treat as a tax that which state law dictates is merely a charge, particularly when state law created the charge in the first instance. Thus, although federal law governs what consti-

tutes a "tax," how the state treats that charge may dictate the ultimate result.

Under federal law, a tax has certain characteristics which distinguish it from a mere debt or charge. The major distinction lies in whether it is an involuntary charge assessed on all or a charge for services rendered in the nature of a contractual or quasi-contractual obligation. As the *Anderson* court explained:

> [A] tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government.
>
> ⁜     *     *     ⁜     *     *
>
> Taxes are not debts …. *Debts are obligations for the payment of money founded upon contract, express or implied.* Taxes are imposts levied for the support of the Government, or for some special purpose authorized by it. The consent of the taxpayer is not necessary to their enforcement. They operate *in invitum.* Nor is their nature affected by the fact that in some States … an action of debt may be instituted for their recovery. *The form of the procedure cannot change their character.*

*Anderson*, 203 U.S. at 492, 27 S.Ct. at 140 (emphasis added). *Accord Feiring*, 313 U.S. at 287, 61 S.Ct. at 1030; *Lorber*, 675 F.2d at 1066. *See also National Cable Television Ass'n v. United States*, 415 U.S. 336, 340–41, 94 S.Ct. 1146, 1148–49, 39 L.Ed.2d 370 (1974). In *Lorber*, the Ninth Circuit held that industrial sewer user fees were not taxes. The court was persuaded by the fact that the charges were triggered by Lorber's decision to use the sewage system and that the amount of the charge was proportionate to their use.[2] 675 F.2d at 1067. With respect to the issue of voluntariness, the court stated:

> In determining if Lorber's use of the system was voluntary, and if it therefore consented to imposition of the fees, we are not free to consider the practical and

---

**2.** The facts of *Lorber* differ slightly from those presented here. The sewage revenue system involved in *Lorber* had two prongs. All residential and industrial users were assessed an *ad valorem* tax, based upon the value of the property, rather than the use of the system. High

volume industrial users were charged a surcharge for excess usage. 675 F.2d at 1066–67. All parties in *Lorber* agreed that the *ad valorem* charges were taxes. They differ from those at issue here to the extent that they are based not upon usage, but rather, upon property values.

economic factors which constrained Lorber to make the choices it did. The focus is not upon Lorber's motivation, but on the inherent characteristics of the charges. *Id.* at 1066. Put another way, the fact that *Lorber* probably had nowhere else to turn for sewerage services did not transform the charges into involuntary pecuniary burdens, and hence taxes.

■ Like the industrial sewer fees in *Lorber*, I conclude that the water and sewer rents are charges for services rendered, rather than involuntary pecuniary burdens. By state enactment, municipalities are granted the power to impose and collect "an annual rate or charge *for the use of* ... [the] sewerage system ... from the owners of, or the users of water in or on the property served ...." Sewer Rental Act of 1935, Pa.Stat.Ann. tit. 53 § 2231 (Purdon's 1974) (emphasis added). Under the Act, this annual rate must be "apportioned equitably among the properties served ...." *Id.* at § 2232. Municipalities are also obligated to "fix rates *to be charged for the water furnished* within the limits of such city, borough or town ...." Pa.Stat.Ann. tit. 53 § 2934 (Purdon's 1974) (emphasis added). These statutory provisions base the charges upon the *use* of the water and sewage systems.[3] The charges are consensual rather than involuntary; they are triggered when the property owner elects to use the system. I agree with the reasoning in *Lorber* that it is not relevant that a property owner may have no other choice in obtaining water and sewer services. The "inherent character"

of the charges are premised upon an implied agreement to pay for the water and sewer services furnished.

It is very telling that the Pennsylvania Supreme Court has twice struck down municipal ordinances which endeavored to base sewer rents upon the assessed value of the property served rather than the amount of actual use of sewage facilities. *See Philadelphia's Petition,* 343 Pa. 47, 21 A.2d 876 (1941); *Hamilton's Appeal,* 340 Pa. 17, 16 A.2d 32 (1940). In *Hamilton's Appeal,* the charge imposed for sewage was forty (40) cents for each one hundred dollars of the assessed value of the property.[4] The court first noted that sewer and water systems are operated by municipalities in their proprietary rather than governmental capacity. As such, a municipality is no different from private industry and deserves to be paid for its services. 340 Pa. at 20–21, 16 A.2d at 34. The court explained that sewer rents:

> are not taxes, nor a substitute for taxes, but charges made, without discrimination, for an industrial service rendered in value equal to the respective sums charged; by using the facilities with knowledge of the rates charged, the consumer, by implication, contracts and agrees to pay the rates, and his obligation to make payment rests upon contract rather than upon any exercise of the taxing power .... They are "simply charges for a commodity sold as any others sell commodities."

*Id.* at 21, 16 A.2d at 34 (citations omitted). The court held that this ordinance, which

---

**3.** In Philadelphia, sewage disposal rates are roughly based upon the amount of water used, the idea being that the amount of water that comes in must ultimately go out as sewage. The Philadelphia ordinance has special provisions for those who do not use either city water or the sewage system. Where a property owner does not use city water, he or she shall be charged only for the amount of water discharged into the sewage system. Phila.Code § 13–201(3). If an industrial property uses city water, but does not discharge all or part of it, that portion of water not discharged is deducted from the sewage service charge. Phila.Code § 13–201(4). Thus, water and sewer rents in

Philadelphia are based upon not only usage of the systems, but also the amount of that usage.

**4.** After that ordinance was invalidated, the City tried again, this time using two factors to reach the appropriate rate—twenty-five percent (25%) of the water rate plus thirty cents for each one hundred dollars. Relying upon Hamilton's Appeal, the lower court invalidated the latter measure. This opinion was affirmed and adopted by the Pennsylvania Supreme Court. *Philadelphia's Petition,* 343 Pa. 47, 59, 21 A.2d 876, 882 (1941).

based rents upon property value rather than use, exceeded the scope of the Sewer Rental Act, quoted above, which allows municipalities to charge "for the use" of sewage facilities. Pa.Stat.Ann. tit. 53 § 2231. The court noted that the Act only authorized sewer rents based upon *actual use* and opined that it "would seem to require that the charge be reasonably proportional to the value of the service rendered, and not in excess of it ...." *Id.* at 22, 16 A.2d at 35. Interestingly, the court characterized the invalid charge based upon property values, as a "tax." [5]

The Pennsylvania courts view water rents in the same vein as sewer rents, which makes sense given the close relationship between the two services, *see* note 3 *supra*. Foreshadowing the analysis employed in *Hamilton,* the court in *Jolly v. Monaca Boro.,* 216 Pa. 345, 65 A. 809 (1907), stated:

> [T]he borough, when furnishing a supply of water, stands upon the same footing as a private corporation, it is entitled to the same privilege of receiving payment for the service rendered.
>
> \*    \*    \*    \*    \*    \*
>
> Water rates are paid as compensation or equivalent, by those who choose to receive and use the water, as a commodity furnished by the borough. No one is compelled to receive or use the water, and when anyone does so, with knowledge of the rates charged, he by implication agrees to pay those rates, and his obligation rests upon contract.
>
> *The collection of water rates should not be in any way confused with the exercise of the power of taxation .... Water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity. The obligation to pay for the use of water rests either on express or implied contract* on the part of the con-

sumer to make compensation for water which he has applied for and received, on the terms and conditions made public.

*Jolly,* 216 Pa. 349–50, 65 A. at 811 (citations omitted) (emphasis added). *Accord East Taylor Mun. Auth. v. Finnigan,* 202 Pa.Super 335, 338, 195 A.2d 821, 822–23 (1963) (lien under section 7107 improper where no water furnished). Therefore, water rents, like sewage charges, are consensual payments for services rendered. They are in the nature of contractual obligations, rather than involuntary pecuniary burdens, and do not qualify as "taxes" under the Bankruptcy Act.

■ In arguing that water and sewer rents should be treated as property taxes, the City stresses the statutory remedies available for delinquent payments. The City correctly points out that outstanding rents can be reduced to a lien against the property upon the filing of the claim with the prothonotary. Pa.Stat.Ann. tit. 53 §§ 2231, 7101, 7106 (Purdon's 1974). Moreover, the owners of the property can be held personally liable for the unpaid rents. Pa.Stat.Ann. tit. 53 § 7251 (Purdon's 1974). In its first decision, the bankruptcy court seemed to agree with the City that this remedy automatically transformed the rents into taxes. *See In re Adams,* 17 B.R. at 743. I cannot agree. In *Anderson,* the United States Supreme Court stated that the nature of a tax is not affected by the fact that "an action in debt may be instituted for their recovery. The form of procedure cannot change their character." 203 U.S. at 492, 27 S.Ct. at 140. Therefore, the remedy or manner of collection cannot alter the inherent character of water and sewer rents. Moreover, the statute itself does not support the City's argument. Section 7101, which defines "municipal claims" specifically includes not only taxes but also claims for work done or services supplied. Subsection (2), which specifically mentions

---

**5.** This is consistent with *Lorber* where all parties agreed that the residential charges based upon property values were taxes. *See* note 2 *supra.*

water and sewer rents, does not include taxes. All municipal claims may become a lien on the property. *See* Pa.Stat.Ann. tit. 53 § 7106(a) (Purdon's 1974). Since all municipal claims are not taxes, the mere fact that a lien can be obtained does not transform a charge or debt into a tax.[6]

In further support of its argument, the City cites *McDowell v. City of Barberton, Ohio,* 38 F.2d 786 (6th Cir.1930) and *In re Industrial Cold Storage & Ice Co.,* 163 F. 390 (E.D.Pa.1908). In *McDowell,* the court held water rents to be taxes, principally because the state statute accorded them the status of taxes. 38 F.2d at 788. The court noted that water rents are generally not taxes, but may be deemed such by the legislature. *Id.* at 787. The particular Ohio statute in question stated that compensation for water "shall be collected in the same manner *as other city taxes.*" *Id.* at n. 1 (emphasis added). Since the Pennsylvania statute does not treat water and sewer rents as taxes, *McDowell* is inapposite.

In *Industrial,* Philadelphia water rents were also held to be taxes. 163 F. at 392. The court reasoned that, like taxes, they were levied annually, could be a lien against the property and were used for public purposes. *Id.* I have already rejected the argument that the manner of collection and remedies for non-payment transform water and sewer rents into taxes. Moreover, *Industrial* ignored the Pennsylvania Supreme Court's decision in *Jolly,* holding that water rents are not taxes, but rather are consensual payments for services rendered. Any conceivable relevance that *Industrial* might have to sewer rents is foreclosed by the subsequent enactment of the Sewer Rent Act and the interpretation of that statute in *Hamilton.* Therefore, *Industrial's* continuing viability is questionable and I shall not adopt its reasoning.

Finally, there is an alternate ground for my decision that water and sewer rents are not entitled to priority under section 507(a)(6)(B). Applying the applicable federal standards, I have determined that charges for water and sewage services are not "taxes." Even assuming that they could be construed as taxes, they are not taxes "on property" as is now required under the Bankruptcy Act. In *United States v. Oswald and Hess Co.,* 345 F.2d 886 (3d Cir.1965), the Third Circuit held that water and sewer rents were not taxes "due on property." *Id.* at 888. The court did not decide whether they were taxes of another form, but only that they were not property taxes, as they were not attached to a "specific or particular property." *Id.* (citations omitted). Instead they were characterized as "charges for services rendered to the occupants." *Id.*[7] Therefore, water and sewer rents are neither "taxes," nor taxes "due on property." As such, they are not entitled to priority under section 507(a)(6)(B). Accordingly, the decision below shall be reversed.

---

6. To accept the City's argument would, as a practical matter, turn all debts owed to the City into taxes. If, for example, a homeowner owed money to the City for some repairing and recurbing of property, that claim could be reduced to a lien. Yet, that debt would clearly be for services rendered by the City and could not be characterized as a "tax."

7. The City argues that *Oswald and Hess* is distinguishable as it involved competing creditors, not the determination of whether an unsecured creditor is deserving of priority status. Appellee's Brief at 11. I do not find this distinction persuasive. The definition of a "property tax" will not vary depending upon the context.