CAPE MAY COUNTY SAVINGS AND LOAN ASSOCIATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF, v. BETTY LOU SEBASTIAN, HEIR AT LAW AND NEXT OF KIN OF ANNA D. SEBASTIAN; EVELYN A. HALL, GENERAL GUARDIAN OF BETTY LOU SEBASTIAN; VIR-MAC CONSTRUCTION CO., A NEW JERSEY CORPORATION; CAMDEN TRUST COMPANY; AND UNITED STATES OF AMERICA, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided December 5, 1966.

*Mr. William J. Hughes* for plaintiff.

*Mr. David M. Satz, Jr.,* United States Attorney, for defendant, United States of America (*Mr. Donald G. Targan,* Assistant United States Attorney, of counsel).

WICK, J. S. C. This matter comes before the court on an order to show cause issued by this court in April 1966. The case involves a petition for surplus monies deposited with the Clerk of the Superior Court and arising from a foreclosure sale in November 1965. The facts in the case are not disputed.

Plaintiff was the holder of a bond executed by Robert J. and Anna D. Sebastian and secured by a purchase money mortgage on certain lands and premises in Cape May County, New Jersey. The bond and mortgage were executed in April 1964. In December of the same year default occurred which led to the institution of foreclosure proceedings in May 1965. Pursuant to the statutes of New Jersey, which require that all parties having an interest in the property subject to foreclosure be joined, plaintiff initiated a search of the record title which disclosed a judgment in favor of the Camden

Trust Company against the mortgagors, which judgment was entered in November 1964 and subsequently assigned to the United States in January 1965. The United States recorded its assignment on March 15, 1965, more than two months prior to the start of foreclosure. Accordingly, the United States of America was made a party defendant to the foreclosure.

A final judgment was rendered in September 1965 and, as mentioned above, the property was sold at a sheriff's sale in November 1965 and resulted in a surplus of $350.44.

Plaintiff contends that it is entitled to $257.34 out of the surplus, $153.78 for reasonable attorney's fee and $103.56 for taxes advanced by plaintiff prior to foreclosure. Regarding the former claim, plaintiff relies on *R. R.* 4:55–7 (c) which states:

"No fee for legal services shall be allowed in the taxed costs or otherwise, except:

\*      \*      \*      \*      \*      \*      \*      \*

(c) In an action for the foreclosure of a mortgage. The allowance shall be calculated as follows: on all sums adjudged to be paid the plaintiff in such an action, amounting to $5,000 or less, at the rate of 3%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1½%; and upon the excess over $10,000 at the rate of 1%.

\*      \*      \*      \*      \*      \*      \*      \*"

As regards the latter amount for advancement of taxes, plaintiff directs the attention of the court to several New Jersey cases which hold that a mortgagee who pays taxes on the mortgaged land in order to protect his security is entitled to be reimbursed and obtains a lien prior to the mortgage lien. *South Amboy Trust Company v. McMichael Holdings, Inc.*, 141 *N. J. Eq.* 12 (*Ch.* 1948); *Bluestone B. & L. Ass'n of West New York v. Glasser*, 117 *N. J. Eq.* 392 (*Ch.* 1934); *Farmer v. Ward*, 75 *N. J. Eq.* 33 (*Ch.* 1908).

Defendant United States of America counters that its lien is a federal lien and as such federal law must be applied. Federal common law is to the effect that first in time is first in priority. Defendant also argues that for plaintiff to prevail

it must show that both of its claims were choate at or before the time when the defendant filed its assignment.

To support its contention of priority over the attorney's fee, defendant cites the recent Supreme Court decision in *United States v. Equitable Life Assurance Society*, 384 *U. S.* 323, 86 *S. Ct.* 1561, 16 *L. Ed. 2d* 593 (1966), wherein a federal tax lien under 26 *U. S. C. A.* §§ 6321, 6322, was held to have priority over the attorney's fee allowed by *R. R.* 4:55–7(c), the very rule here in question. As to the priority of defendant's claim over the advanced taxes, defendant cites *United States v. Oswald & Hess Co.*, 345 *F. 2d* 886 (3 *Cir.* 1965), *Empire State Collateral Co. v. Bay Realty Corp.*, 232 *F. Supp.* 330 (*E. D. N. Y.* 1964); *United States v. Ringwood Iron Mines, Inc.*, 251 *F. 2d* 145 (3 *Cir.* 1958), and *In re Lehigh Valley Mills, Inc.*, 341 *F. 2d* 398 (3 *Cir.* 1965).

To say that this is an oft litigated and highly confusing area of the law would be not a mild understatement.

The problem is further complicated by decisions which have a tendency to overstate the solution in light of the peculiar facts before the court. Thus, in the case of *United States v. Oswald & Hess Co.*, 345 *F. 2d* 886 (3 *Cir.* 1965), Circuit Judge Staley makes the broad statement:

"Over the years, the Supreme Court and this court have consistently held that federal law is determinative where the question involved is the priority to be accorded to a lien of the federal government *whatever its source.*" (Emphasis added)

To support this contention Judge Staley cites *United States v. Security Trust & Savings Bank*, 340 *U. S.* 47, 71 *S. Ct.* 111, 95 *L. Ed.* 53 (1950), which case dealt with a federal tax lien arising under 26 *U. S. C. A.* § 3670. Cited also was *United States v. Waddill, Holland & Flinn, Inc.*, 323 *U. S.* 353, 65 *S. Ct.* 304, 89 *L. Ed.* 294 (1945), which again dealt with federal tax liens and a debt due directly to the Federal Housing Administration.

Judge Staley also cited *Ersa, Inc. v. Dudley*, 234 *F. 2d* 178 (3 *Cir.* 1956), which dealt with the priority to be afforded

claims for federal withholding and social security taxes under § 3670.

Finally, the court cited *United States v. Ringwood Iron Mines, Inc.*, 251 *F. 2d* 145 (3 *Cir.* 1958), which dealt with a mortgage given by the Federal Government on a purchase of land owned by the same.

This court in no way doubts the propriety of those decisions or, for that matter, the decision in *United States v. Oswald & Hess Co., supra,* which involved a mortgage given as security for a loan from the Small Business Administration. However, this court cannot accept the conclusion reached by the court in the *Oswald* case and advanced by the United States in the present action that federal law will always apply to federal liens regardless of their source.

To accept this argument would create what this court feels to be an intolerable situation. Let us draw it to its logical conclusion, using the above-cited argument as a starting premise. In any action involving a federal lien, no matter whence it was derived, federal common law must be applied. Federal common law states that first in time is first in right, in spite of priorities created by state law. Therefore the Federal Government can effectively frustrate state policy by taking assignments of claims from nonpreferred lien creditors whose liens arose prior to a foreclosure or a levy and execution, and asserting them as federal liens.

It might be argued that such a situation is preposterous and out of touch with reality, yet on the basis of the record in the present action, this is exactly what has happened. The lien in this case did not arise pursuant to any statutory authority vested in the United States or any of its agencies. We are not concerned with a lien for unpaid taxes, a loan from the Small Business Administration, or a mortgage guaranteed by the Federal Housing Administration. On the basis of the facts presented to this court, we are dealing solely with an assignment of a judgment from a private entity, which in the hands of said private entity would be subordinate to the

claims of the mortgagee for taxes advanced and a reasonable attorney's fee.

Looked at in this light the case is very similar to *Byram Holding Co. v. Bogren*, 2 *N. J. Super.* 331 (*Ch.* 1949), wherein the Federal Housing Commissioner took an assignment of a mortgage originally given to Duval Lumber and Supply Co. Subsequently, a tax sale was had on the premises and a tax sale certificate issued thereon which eventually came into the plaintiff's hands. Plaintiff started foreclosure proceedings and the Commissioner alleged that the mortgage in his hands was a lien of the United States and was prior to and superior to the lien for unpaid municipal taxes. The court rejected the contention of the United States in that case and stated:

"* * * Moreover, the original mortgagee was Duval Lumber & Supply Co., a private New Jersey corporation. The Commissioner acquired the mortgage by assignment and it is fundamental that an assignee of a mortgage succeeds to the rights, privileges and disabilities of the assignor. Of course, the defense raised by the Commissioner would not have been available to the assignor."

The decision in *Byram* was cited in *United States v. Ringwood Iron Mines, Inc.,* 151 *F. Supp.* 421 (*D. N. J.* 1957), *affirmed* 251 *F.* 2d 145 (3 *Cir.* 1958), and deemed of questionable validity though not actually overruled. However, it should be noted that in the *Ringwood* case, as in all the other cases cited in support of the United States' position, the lien involved was a federally created lien, that is, a lien arising directly from the powers vested in the United States or in one of its agencies. The lien in the *Ringwood* case was a mortgage given to the General Services Administration in return for its conveyance of land to the mortgagor.

The *Byram* case and the case at bar both deal with liens privately created and subsequently assigned to the United States. Thus, even admitting that the *Byram* case is properly subject to attack for the broad sweep of its statements, this court feels that the decision reached therein was correct on the facts and that this court is bound thereby.

It is the opinion of this court that the lien asserted by the defendant, insofar as it originally arose from transactions between private entities and is in the hands of defendant solely as an assignee of one of the said private entities, is not a federally created lien, but a state created lien in the hands of the Federal Government.

Further, this court feels that the application or nonapplication of federal law should not and does not rest on the purely fortuitous character of the holder of a lien, but rather on the nature of the lien itself. In the present case the lien arose pursuant to an action between private parties in a state court, and state law must apply to the question of priorities. Under New Jersey law plaintiff is entitled to priority for the statutory attorney's fee and the advanced taxes.

Judgment will be entered accordingly.